Bernice **AHRENS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–99–00686–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 22, 2001.

Frances Northcutt, Houston, for appellant.

Donald W. Rogers, Jr., John B. Holmes, Houston, for State.

Panel consists of Justices MIRABAL, NUCHIA, and PRICE.[*]

## OPINION

NUCHIA, Justice.

Appellant, Bernice Ahrens, was charged with capital murder.[1] A jury convicted her of murder and assessed punishment at 80 years confinement. In this appeal, she raises three points of error: (1)-(2) whether the evidence was legally and factually sufficient to warrant her conviction; and (3) whether the trial judged erred when he denied her motion to include a jury instruction on the lesser included offense of manslaughter. We affirm.

## BACKGROUND

On August 26, 1998, Mical Renz was jogging on Main Street in Galena Park at about 6:15 a.m. when he saw what he believed to be a person lying on the embankment. At the time, Renz did not stop to inquire further into what he had seen. After finishing his morning run and preparing for work, Renz went back to the scene a few minutes before 8:00 a.m. He discovered that what he had seen earlier was the body of a dead man. Renz then called the police. A few minutes later, Officer Kevin Cates of the Galena Park Police Department arrived on the scene and confirmed that the victim was dead. Cates observed that the body was dressed in clean clothes, despite the fact that the body was bloody and badly bruised. From

---

[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

[1.] Specifically, the State alleged that appellant, "while in the course of committing and attempting to commit the KIDNAPPING of LOUIS MUSSO, intentionally cause[d] the death of LOUIS MUSSO by BEATING LOUIS MUSSO WITH A BAT, A BELT, HANDS, AND FEET."

that, the officer concluded that the victim had been moved to that location rather than killed there. Shortly after Cates's arrival, Assistant Chief Robert Pruett also arrived. Pruett had a police dispatcher check neighboring cities for reports of missing persons. Jacinto City, a city which borders Galena Park, indicated that a Suzanne Basso had recently filed a missing person report. Based on that report, Pruett headed out to Basso's address, hoping to gain more information regarding the then unidentified victim.

When Pruett arrived at Basso's apartment, Basso had gone to the Jacinto City Police Department to give them an identification card belonging to Louis "Buddy" Musso, the person she had reported as missing. She returned to her apartment a few minutes after Pruett had arrived. From speaking with her, Pruett learned that Musso lived with Basso and her son, James O'Malley. Basso invited Pruett into her home. While inside, Pruett met O'Malley and saw some bloody clothing and a bloody sheet near a cot on the living room floor. Basso told Pruett that Musso slept in the living room on the cot and that the clothing was Musso's. Pruett then asked Basso and O'Malley to accompany him to where the victim's body lay to determine whether they could identify him. When they arrived, O'Malley got out of the car and, without displaying any signs of surprise or emotion, positively identified the victim as Musso. Pruett then asked them both to go to the police station with him and give a written statement, to which both agreed. At the police station, O'Malley confessed, in an oral and written statement, to the events surrounding, and the persons involved in, the murder of Musso. He directed the officers to a dumpster where officers retrieved a garbage bag that contained bloodstained clothes worn by Musso at the time of his death, plastic gloves, bloodstained towels, and used razors, all used to coverup evidence of Musso's death.

After speaking with O'Malley, Pruett went to appellant's apartment, located in Houston. Appellant was one of the persons mentioned by O'Malley as being involved in the murder of Musso. In addition to appellant, her son, Craig Ahrens, her daughter, Hope Ahrens, and her daughter's boyfriend, Terence Singleton, were at the apartment. According to officers, after they identified themselves, they asked appellant whether she knew why they were there, to which she replied, "This is about Buddy, isn't it?" Appellant consented to a search of the apartment and her car. During the search, officers collected in the apartment, among other things, a wooden baseball bat, an aluminum baseball bat, handcuffs, and pieces of bloodstained carpet. They also collected carpet from the trunk of appellant's car. Based on O'Malley's statement and their discovery at the Ahrens apartment, the officers arrested all four. While in custody, appellant and Craig each voluntarily waived their rights and gave statements regarding Musso's murder.

According to appellant's and Craig's statements, as well as trial testimony, Musso was a 59–year–old mentally retarded man living in New Jersey in 1998 when he met Suzanne Basso. In June 1998, Musso came to Houston, Texas to live with Basso and her son, O'Malley. Basso and O'Malley were friends with appellant and her children. On June 22, 1998, Musso signed a Last Will and Testament leaving his property and insurance benefits to Basso. Appellant, O'Malley, and Terence Singleton signed the will as witnesses.

Beginning on Friday, August 21, 1998 and continuing until his death, on about Tuesday, August 25, 1998, Musso was denied food, made to sit all night with his

knees on a mat and his hands on the back of his neck, and subjected to a series of violent beatings administered by Craig and Hope Ahrens, Basso, O'Malley, and Singleton. Many of the beatings took place in appellant's apartment. The beatings inflicted on Musso included being hit with a belt, baseball bats, hands, fists, feet, and other hard objects, and being kicked with boots. Appellant admitted that she struck Musso one time, claiming it was because he had hit a little girl appellant was babysitting. As a result of the beatings, Musso died in appellant's apartment late Tuesday night. To cover up his death, Basso suggested they use appellant's car and drive to a location where Musso's body could be disposed of. Appellant suggested they place Musso's body in the trunk. After Musso's body was cleaned, appellant assisted in placing his body in the trunk and, later, in leaving him on the embankment where he was later discovered.

Lab tests of the evidence recovered from appellant's apartment revealed that there was blood on the carpet taken from the hallway, blood and hair on the wooden bat and blood on the aluminum bat recovered from appellant's apartment, blood on the bumper of her car, and blood on most of the items found in the garbage bag recovered from the dumpster. At trial, there was testimony that Musso had lost 25–30 pounds by the time of his death. Among the numerous injuries the medical examiner detailed were fractured ribs, a broken nose, a skull fracture, cigarette burn marks, and bruises resulting from blunt force trauma extending from the bottom of Musso's feet to his upper torso, including his genitals, eyes, and ears. Blood was discovered in Musso's oral cavity and windpipe. The examiner further testified that the cause of most of the injuries was consistent with Musso's being beaten with hard objects. The cause of death was determined to be multi-blunt-force trauma.

## DISCUSSION

### Legal and Factual Sufficiency

Appellant's first and second points of error challenge the legal and factual sufficiency of the evidence relied on to secure her conviction. Specifically, appellant puts forth two arguments in support of her contention that the evidence is both legally and factually insufficient. First, she argues that the record fails to show that her single act of striking Musso, which she admits to, was a cause or concurrent cause of Musso's death. Second, she asserts that the evidence fails to establish beyond a reasonable doubt that she had the specific intent to promote or assist in the murder of Musso. Because we conclude the evidence is sufficient to sustain appellant's conviction as a party, we address only her second argument.

We follow the usual standard of review for legal and factual sufficiency. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979) (legal sufficiency); *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App.2000).

In his instructions to the jury, the judge stated that the jury could convict appellant of murder as a principal or as a party if it found she was a party to an intentional murder. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994). Evidence is legally sufficient to convict appellant under the law of parties "for an offense committed by the conduct of another if, ... acting with intent to promote or assist the commission of the offense, [s]he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2); *Ransom v. State*, 920 S.W.2d 288, 302 (Tex.Crim.App. 1994). The evidence must show that, at

the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose. *Id.* In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Id.* Moreover, the jury may infer the intent to kill from the use of a deadly weapon. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996).

To support her theory of the case—that she was not a party to murder—appellant concedes that she assisted in the coverup of Musso's death. But, she contends, this evidence is no indication that she assisted or participated or encouraged others' intentional acts prior to Musso's death. Moreover, she argues, mere presence at the scene of an offense or even knowledge that an offense is being committed does not make her a party to the offense. We do not disagree with appellant's statement of the law. *See Thomas v. State,* 915 S.W.2d 597, 599 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). However, a review of the record provides more than adequate evidence of appellant's involvement in the murder of Musso to sustain her conviction.

■ In her written statement, appellant admits she was aware of the abuse Musso suffered at the hands of Basso and O'Malley. When Basso brought Musso over to appellant's apartment on the Friday preceding his death, he had two black eyes and several cuts on the back of his head. During the five day episode that ended with Musso's death, appellant, Basso, and O'Malley went out to eat on two occasions. Both times, Musso was taken along and left in the car handcuffed, presumably to prevent him from escaping. All that weekend, appellant was aware that

Musso, who was being kept in her apartment, was being beaten violently and deprived of food. At one time, when appellant returned home from work, she noticed blood on the walls of her apartment. She asked her son about it, and he replied by recounting in detail the beatings inflicted upon Musso. Appellant was also present when Musso was pleading for relief from the constant beatings and requesting to be taken to a hospital, because he was not feeling well. This evidence is in addition to appellant's admitted assistance in the coverup of the murder, including the use of her car in carrying and disposing of the body. While "mere presence at the scene of an offense alone is not sufficient to support a conviction, it may be sufficient to prove guilt when combined with other circumstances." *Id.* (citing *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex.Crim.App. 1987)). Clearly, appellant was not "merely present."

■ We conclude that the evidence in the record is legally sufficient to sustain appellant's conviction as a party. Furthermore, the jury is the sole judge of the credibility of the witnesses and may accept or reject any or all of the evidence on either side. *See Cain,* 958 S.W.2d at 410 n. 4. After reviewing all of the evidence admitted in this case in a neutral light, we do not find that the verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We, therefore, overrule appellant's first and second points of error.

### Jury Instruction on the Lesser Included Offense of Manslaughter

In her third point of error, appellant contends the trial court erred in denying her request for a jury instruction on the lesser included offense of manslaughter.

Appellant was charged with capital murder. A person commits capital murder

when she "intentionally or knowingly causes the death of an individual" in the course of "committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, or obstruction or retaliation." Tex. Penal Code Ann. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 1994). At the end of the guilt/innocence phase of the trial, the judge instructed the jury on the law regarding capital murder, murder, and aggravated assault. Appellant requested that the judge also instruct the jury on the charge of manslaughter, which the judge denied.

A charge on a lesser included offense must be given if (1) the lesser included offense is included within the proof necessary to establish the charged offense, and (2) there is some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, she is guilty only of the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993); Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser included offense should be given. *Banda v. State*, 890 S.W.2d 42, 60 (Tex.Crim.App. 1994). Regardless of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given. *Saunders v. State*, 840 S.W.2d 390, 391 (Tex.Crim.App.1992).

Manslaughter can be a lesser included offense of capital murder, and therefore appellant meets the first part of the test. *Adanandus v. State*, 866 S.W.2d 210, 232 (Tex.Crim.App.1993). We must next determine whether the record contains evidence that appellant is guilty of only manslaughter, individually or as a party. *Rousseau*, 855 S.W.2d at 673. We examine all of the evidence for any that would support a verdict of guilt only on the lesser charge. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994). Manslaughter would require a finding that appellant recklessly caused the death of Musso or was a party to recklessly causing Musso's death.[2] *See* Tex. Penal Code Ann. § 19.04 (Vernon 1994). In determining whether there is evidence to support a charge on recklessness, a statement that a defendant did not intend to kill the victim "cannot be plucked out of the record and examined in a vacuum." *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App.1986).

Appellant argues that, because she was away at her job during much of the time Musso was beaten, she lacked the requisite mental state to be convicted of murder. That is, her argument hinges on the proposition that she was not aware of the beatings. But in her own statement, she admitted to being present when Basso "would beat him [Musso] with anything that was handy, she hit him with a belt, or hands and a wooden bird that *I had*." [Emphasis added.]

Appellant also contends that her act of hitting Musso after she was told that Musso had hit a young girl appellant was babysitting could form the basis for a conviction for manslaughter. Her argument fails,

---

**2.** Section 6.03 defines "recklessly":

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Tex. Penal Code Ann. § 6.03(c) (Vernon 1994).

however, for the simple reason that, as appellant herself asserts, her single act of striking Musso could not have been the cause of his death.

Appellant further argues that it is possible to intentionally solicit or assist another person in committing a reckless act. *See Mendez v. State,* 575 S.W.2d 36, 37–38 (Tex.Crim.App.1979). Here, too, we do not disagree with appellant's recitation of the law. But as to her argument that she was a party to the reckless acts of others, the facts of this case militate against her theory. Appellant points to no facts that indicate any one person, including appellant herself, acted in a reckless manner. She admits to Basso telling her that Basso and O'Malley repeatedly and intentionally beat Musso before he arrived at appellant's home. She also admits that she was aware that Musso was systematically beaten while he was kept on a mat in *her* apartment, as well as being witness, on two occasions, to Musso's being handcuffed and kept in the car while she and others went out to eat. Indeed, as we set out above, the facts here paint a focused view of all involved intentionally and knowingly engaging in an uninterrupted barrage of unfathomable violence that predictably led to Musso's death. Moreover, there was testimony that Musso's beatings began before he was brought to appellant's home and continued thereafter with more intensity. Such acts exhibit an intentional and knowing pattern of conduct leading to Musso's death that cannot be reconciled with the notion that appellant or the other parties acted with a conscious disregard for a risk they created. *See Lewis v. State,* 529 S.W.2d 550, 553 (Tex.Crim.App. 1975) (noting that reckless conduct "involves conscious risk creation, that is, the actor is aware of the risk surrounding his conduct or the result thereof, but consciously disregards that risk"; and that "[a]t the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct").

Appellant does not meet the second part of the *Rousseau* test because, under the evidence, the jury could not have found appellant guilty only of manslaughter. *Bergeron v. State,* 981 S.W.2d 748, 752 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd). We overrule appellant's third point of error.

We affirm the judgment of the trial court.