NO. 07-01-0426-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 29, 2003

_____


ROMARCUS DEON MARSHALL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 179TH DISTRICT COURT OF HARRIS COUNTY;

NO. 833880; HONORABLE J. MICHAEL WILKINSON, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.


**OPINION**


Appellant Romarcus Deon Marshall appeals from his conviction for capital murder. By two issues he asserts that the evidence is factually insufficient to support the jury's verdict.  We affirm.

# BACKGROUND

In the early morning hours of January 18, 2000, three men forced their way into the trailer residence of Anastacio Sandoval. All of the men were armed with firearms and one of them, a black male, was wearing a bulletproof vest. Sandoval, Jose Murillo, Esmerelda Cordero and Emory Zepeda were asleep inside the trailer. Murillo, who had been sleeping in the living room, recognized one of the men as Brian Grabow. While Grabow held Murillo in the living room at gunpoint, the black male entered the bedroom where Sandoval and Cordero were sleeping and the other white male, later identified as Brad Hanes, entered the northern bedroom where Zepeda was located. The three intruders then proceeded to loot the trailer, taking money, drugs, and other items including some tire rims and a shotgun. As Hanes, Grabow and the black male began to leave the residence, Sandoval stood up and approached Hanes. Hanes was holding an assault rifle pointed at Sandoval. The rifle discharged and Sandoval collapsed, having been shot in the chest. He died at the scene. The intruders fled in a dark colored SUV-type vehicle.

Harris County Sheriff's Office detectives Wayne Kuhlman and Larry Davis investigated Sandoval's death. From witness statements, they identified Grabow as a suspect. Grabow was arrested the same day, and he gave a statement implicating appellant. A warrant was obtained for appellant's arrest. Kuhlman and other detectives drove to appellant's apartment, where appellant was located and gave consent for a search of his apartment.

In searching appellant's apartment, the officers found five firearms, including an assault rifle which was later identified by the State's expert witness on ballistics as being the weapon that fired the bullet that killed Sandoval. The officers also found a bulletproof vest belonging to appellant.

After receiving information that the shotgun taken from Sandoval's residence might be located in appellant's apartment, a second written consent to search the apartment was obtained from appellant. The shotgun was found on a shelf over the refrigerator in the kitchen.

Appellant was indicted for capital murder. He pled not guilty. Trial was to a jury. The State's theory was that appellant was criminally responsible for the killing of Sandoval by Hanes because appellant was part of a conspiracy with Hanes to commit the felony offense of robbery of Sandoval; during the course of the robbery Hanes intentionally caused Sandoval's death by shooting him; and the killing was in furtherance of committing the robbery and should have been anticipated as a result of the carrying out of the conspiracy. See TEX. PEN. CODE ANN. § 7.02 (Vernon 2003).[1]

The surviving victims of the robbery were among the State's witnesses, as was Grabow. Appellant testified in his defense. The victims could not identify appellant as having participated in the robbery, although they testified that one of the robbers was a black male. Grabow testified that appellant was the black male who participated in the

---

[1]Further references to a section of the Penal Code will be by referencing "PC §_."

3

robbery. According to Grabow, Hanes asked him if Grabow could score some dope. Grabow told Hanes that he could get some dope from Sandoval, whereupon Hanes suggested that they just rob Sandoval instead. Grabow agreed and later the two of them and a woman named Crystal went to appellant's apartment. Grabow testified that Hanes was armed with a nine-millimeter handgun at this time.

According to Grabow, when they arrived at appellant's apartment, Hanes went inside by himself. After approximately 15 minutes, Crystal also went inside the apartment. After a few more minutes, appellant, Hanes and Crystal all came out of the apartment. Appellant was carrying two guns. Appellant, Grabow, Hanes and Crystal got in appellant's blue SUV and they drove to Sandoval's residence. Grabow testified that while they were en route to Sandoval's trailer residence, appellant asked how many people lived there, asked whether they had any guns, and asked where they kept the dope and money. Grabow supplied the information requested by appellant, and also opined that the persons in the trailer "ain't just weak. They was going to probably try to defend theirself [sic]." Grabow stated that appellant was wearing a bulletproof vest.

According to Grabow, appellant pulled the vehicle into the driveway, the three men approached the front door, appellant kicked the door in, the intruders entered with guns drawn and went into different rooms. Grabow testified that he could hear appellant in a bedroom asking Sandoval where the dope was. Grabow testified that appellant forced Sandoval and Cordero into the living room and forced them to lie down on the floor. Appellant then went into the northern bedroom and removed some tire rims. As Hanes and

4

Grabow were helping appellant take the rims out to his vehicle, Sandoval stood up and began approaching Hanes, who was standing at or about the threshold of the outside door. Hanes was pointing the gun towards Sandoval's chest when the gun discharged and Sandoval was shot. Grabow testified that he never saw Sandoval grab the gun.

According to Grabow, appellant, Hanes, Grabow and Crystal then drove back to appellant's apartment. Later, appellant took out $350 and told them to split it up. Grabow took out a "quarter of crack" which he had stolen during the robbery and they split that up also.

Dr. Patricia Moore of the Harris County medical examiner's office autopsied Sandoval's body and testified that Sandoval died from a single gunshot wound to the chest. Moore testified that the bullet was fired from within 18 inches of Sandoval's chest and traveled right to left and front to back on a downward trajectory. She testified that the exit wound was about six inches lower than the entrance wound, which would be consistent with either the gun being angled downward or Sandoval leaning forward when the gun was fired.

Appellant denied involvement in a plan to rob Sandoval, in the robbery itself, or in the shooting. He testified that his involvement in the affair was limited to following Hanes and Grabow to Sandoval's residence to retrieve his gun, which he testified Hanes and Grabow removed from his residence without permission. Appellant testified that he took another one of his guns with him. He testified that he never entered Sandoval's residence

and that it must have been a different black male wearing a bulletproof vest that committed the robbery with Hanes and Grabow. He testified that while he was outside Sandoval's trailer he heard a gunshot and he then saw Hanes and Grabow take off running. He said he retrieved his gun from Hanes and then he saw Hanes and Grabow get in a Ford Thunderbird and drive off. Appellant saw a black male sitting in the Thunderbird on the passenger side. Appellant stated that he then left and drove back to his residence where he stored his guns. He testified that he then drove to a residence where Hanes and Grabow were; he got into an altercation with Hanes; and Hanes sustained a broken wrist. He testified that Grabow grabbed a shotgun, appellant took the shotgun away from Grabow, and appellant then returned to his residence with the shotgun he took from Grabow.

The jury convicted appellant of capital murder. He was sentenced to life imprisonment. He appeals via two issues.

## ISSUES

By his first issue, appellant alleges that the evidence was factually insufficient to support a finding that appellant's co-conspirator Hanes intended to cause Sandoval's death. By his second issue, appellant alleges that the evidence was factually insufficient to support a finding that appellant should have anticipated Sandoval's murder as a result of the carrying out of a conspiracy to rob Sandoval. We will analyze appellant's issues together.

6

STANDARD OF REVIEW and LAW

A factual sufficiency review of the evidence begins with the presumption that the evidence supporting the jury's verdict was legally sufficient under the test outlined in Jackson v. Virginia, 443 U.S. 307, 319-20, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See Clewis v. State, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). Factual sufficiency review is accomplished without viewing the evidence in the light most favorable to the prosecution, as the evidence is viewed in determining legal sufficiency. Id. The evidence is factually sufficient to support the verdict if the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Id. Stated otherwise, the evidence is not factually sufficient to support a conviction if the appellate court determines, after viewing all the evidence, both for and against the finding in a neutral light, that the proof of guilt is so obviously weak as to undermine the confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

A person commits murder under PC § 19.02(b)(1) if the person intentionally or knowingly causes the death of an individual. PC § 19.02(b)(1). A person commits capital murder if he intentionally or knowingly commits murder as defined by PC § 19.02(b)(1) and "the person intentionally commits the murder in the course of committing or attempting to commit . . . robbery." Id. § 19.03(a)(2).

7

A person may be convicted as a party to an offense if the offense is committed by his own conduct, by the conduct of another for whom he is criminally responsible, or both. Id. § 7.01(a). PC § 7.02(a)(2) provides that a person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Id. § 7.02(a)(2).

A person is also responsible for the conduct of another, if, in an attempt to carry out a conspiracy to commit one felony offense, another felony is committed by one of the conspirators acting in furtherance of the conspiracy, and the other offense should have been anticipated as a result of the carrying out of the conspiracy. Id. § 7.02(b).

Intent is a fact question for the jury. See Robles v. State, 664 S.W.2d 91, 94 (Tex.Crim.App. 1984). Intent may be inferred from the words and conduct of an accused. Hernandez v. State, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991). The jury, which is exclusively empowered to determine the issue of intent, may also infer intent to kill from the use of a deadly weapon. Mercado v. State, 718 S.W.2d 291, 295 (Tex.Crim.App. 1986); Ahrens v. State, 43 S.W.3d 630, 634 (Tex.App.–Houston [1st Dist.] 2001, pet. ref'd); Smith v. State, 56 S.W.3d 739, 745 (Tex.App –Houston [14th Dist.] 2001, pet. ref'd). A firearm is a deadly weapon, *per se*. PC § 1.07(a)(17)(A); Hill v. State, 913 S.W.2d 581, 590 (Tex.Crim.App. 1996).

## ANALYSIS AND DISCUSSION

8

In his brief, appellant's counsel cites Clewis in reference to the standard of review for factual sufficiency claims. In the portion of appellant's brief discussing his first factual sufficiency issue, appellant cites PC § 19.03(a)(2) in identifying the element on which the evidence is alleged to be insufficient - in this case the element of intent. Other than Stone v. State, 823 S.W.2d 375 (Tex.App.–Austin 1992, pet. ref'd), which is cited because the portion of Clewis cited by appellant quotes directly from Stone, appellant cites no other authority in support of his argument that the evidence is factually insufficient to support a finding of intent. The remainder of appellant's presentation consists of arguing the facts of the case. Completely absent is discussion of the law which is applicable to the case and discussion of the application of the law to the specific facts of the case.

In the portion of appellant's brief discussing his second factual sufficiency issue, the only authority cited by appellant is PC § 7.02(b) ("Criminal Responsibility for Conduct of Another"). Again absent is any discussion of case law which is applicable to the case and any discussion of the application of law to the specific facts of the case.

We find that the factual sufficiency claims presented by appellant have been insufficiently briefed and present nothing for review. See, e.g., Passmore v. Estelle, 607 F.2d 662, 663-64 (5th Cir. 1979); cert. denied, 446 U.S. 937 (1980); McDuff v. State, 939 S.W.2d 607, 613 (Tex.Crim.App. 1997); Patterson v. State, 46 S.W.3d 294, 305 (Tex.App.–Fort Worth 2001, no pet.); Roise v. State, 7 S.W.3d 225, 232 (Tex.App.–Austin 1999, pet. ref'd).

9

Nevertheless, we will review appellant's issues.

In his brief, appellant refers to portions of Grabow's testimony. In particular, appellant argues that Grabow's testimony that Grabow decided to rob Sandoval because he thought that Sandoval would not call the police if all the robbers took was drugs and money demonstrates that killing Sandoval was not part of their original plan. Appellant also points to the fact that the conspirators chose to rob Sandoval's residence at night when the occupants were likely to be asleep as demonstrating that the conspirators did not intend to kill anyone. Appellant further argues that the evidence shows that the robbery was essentially over by the time Sandoval stood up and approached Hanes. He contends that the medical examiner's testimony showed that Sandoval was lunging toward Hanes at the time the fatal shot was fired and that there simply was not time for Hanes to have formed the intent to kill Sandoval. Finally, appellant cites evidence of the sudden silence of the conspirators in reaction to the gunshot as evidence that the conspirators were surprised by Hanes's shooting of Sandoval, and as evidence, therefore, that none of them, including Hanes, intended to kill Sandoval.

In essence, what appellant proposes are alternative hypotheses that, if accepted by the jury, would have supported the jury's refusal to find Hanes intended to kill Sandoval. Because we must consider all the evidence in conducting a factual sufficiency review, we necessarily consider any reasonable alternative hypotheses raised by the evidence. Ates v. State, 21 S.W.3d 384, 391 (Tex.App.–Tyler 2000, no pet.); Richardson v. State, 973 S.W.2d 384, 387 (Tex.App.–Dallas 1998, no pet.). The existence of alternative reasonable

10

hypotheses may be relevant to, though not necessarily determinative of, a factual sufficiency review. See Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). The mere existence of a reasonable alternative hypothesis, however, does not render the evidence factually insufficient. Ates, 21 S.W.3d at 391; Richardson, 973 S.W.2d at 387.

Clearly the testimony of appellant and Grabow are in conflict. The jury had to determine the credibility of the two witnesses, in conjunction with the other evidence. And, when competing or conflicting evidence and inferences exist, we defer to the jury's resolution of such conflicts if the jury's determination is supported by factually sufficient evidence. See, e.g., Park v. State, 8 S.W.3d 351, 352 (Tex.App.–Amarillo 1999, no pet.); Hall v. State, 970 S.W.2d 137, 142 (Tex.App.–Amarillo 1998, pet. ref'd).

The evidence, part of which we have recited above, is sufficient for a rational jury to have concluded that appellant, Grabow and Hanes conspired to commit a robbery of Sandoval's residence and took loaded firearms with them to aid in carrying out their plan. A jury could have further concluded from the evidence that appellant supplied some of the firearms used in the commission of the robbery and actively participated in the robbery's planning and commission. Thus, the evidence is factually sufficient to support a finding that appellant was present at the commission of the robbery and encouraged its commission. It was also reasonable for the jury to infer Hanes's intent to kill Sandoval by Hanes's use of a deadly weapon, and that appellant was a conspirator to commit the offense of robbery and that appellant should have anticipated Sandoval's murder in furtherance of the conspiracy to commit the robbery. See, e.g., Holiday v. State, 14

11

S.W.3d 784, 790 (Tex.App.–Houston [1st Dist.] 2000, pet. ref'd). After viewing all the evidence, both for and against the finding in a neutral light, we do not conclude that the proof of guilt is so obviously weak as to undermine the confidence in the jury's determination, or that the proof of guilt is greatly outweighed by contrary proof. See Johnson, 23 S.W.3d at 11.

Accordingly, the evidence is factually sufficient to support the verdict. Appellant's first and second issues are overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

Phil Johnson
Chief Justice

Do not publish.