Opinion Issued March 3, 2005









     



In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00193-CR




HAROLD LEWIS VAUGHN, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 973809




MEMORANDUM OPINION

          A jury found appellant, Harold Lewis Vaughn, guilty of capital murder. See
Tex. Pen. Code Ann. § 19.03(a)(2) (Vernon Supp. 2004-2005). The trial court
assessed punishment at confinement for life in prison on February 20, 2004.


 In his
sole point of error, appellant contends that the evidence was factually insufficient to
support his conviction. We affirm.
Facts
          Appellant and co-defendant, David Holford, were charged with the robbery and
murder of the complainant, 18-year-old Trevor Cook. Cook dated a woman named
Gina Powell, who often visited his apartment; she would sometimes bring with her
a girlfriend named Sheila Brecht. 
          Cook sold drugs out of his apartment. He kept the bathroom closet, containing
his main supply of drugs, locked and did not allow visitors access to the closet;
however, Cook did allow clients to see his secondary stash of drugs, which he kept
in the kitchen. It was well-known that Cook often had $1,000 or more worth of
cocaine and large sums of cash in the apartment. Cook’s upstairs neighbor, Ryan
Wick, advised him to be more careful about showing people his money and drugs.
          Holford regularly bought cocaine from Cook and would visit his apartment and
play video games. Holford would sometimes be with appellant when he visited Cook. 
Appellant was known for being aggressive, and he always carried a knife with him. 
He also sometimes carried a one-and-one-half foot long rusty red wrench with a spike
on it. He told friends that the wrench could be used for something other than car
repair. Holford, although calmer than appellant, often stated that he would not have
a problem emulating the acts displayed on violent video games if he was high on PCP
or “fry.” Although Holford had received a monetary settlement from a motorcycle
accident in the summer of 2000, the money was under his parents’ control, and he
complained about the limits on his spending. 
          In August 2001, Holford confided in one of his friends, Dan Dickerson, that
he was thinking about “jacking” Cook or taking Cook’s drugs and money. In early
January 2002, appellant complained of his financial problems to Holford. Holford
stated that he knew someone whom they could jack, but they would have to kill him. 
Because other people were present during this conversation, the subject was quickly
changed. 
          On January 13, 2002, at approximately 3:00 p.m., Cook transacted a drug deal
with one of his friends, Ronald Hornburg. Both appellant and Holford were inside
Cook’s apartment while the transaction took place. Sometime between 3:30 and 4:00
p.m., Cook’s neighbor heard the sound of Cook’s gate opening and closing and saw
appellant emerge from inside the apartment. A short time later, the neighbor heard
more noises and saw both Holford and appellant outside Cook’s apartment. Ten to
15 minutes later, Wick heard some loud knocking on Cook’s door, which continued
for approximately 20 minutes. 
          After having unsuccessfully attempted to reach Cook since around noon that
day, Powell and Brecht arrived at Cook’s apartment at approximately 4:00 p.m. to
return his truck, which Powell had borrowed, to him. Cook answered neither his door
nor his cell phone. Powell noticed that Cook’s bedroom window was unlatched,
which she found unusual. The screen over the window was loose and fell to the floor
with a mere touch. The women climbed through the window into the apartment.           Upon entering Cook’s apartment, the women noticed that his belongings were
in disarray and that his dog was acting in a disturbed manner. The women discovered
Cook lying on the living room floor in a pool of blood, and they called the police. 
They then ran upstairs to inform Wick of Cook’s death and to attain the correct
address for the apartment. 
          While Brecht was outside waiting for the police, appellant walked up with two
fresh scratches on his face; he was wearing one of Cook’s shirts. Appellant entered
the apartment and viewed Cook’s body, but appeared unaffected by what he saw.
After saying, “I’ve got to get out of here,” appellant left.
          Officers James Ramsey and Janet Nederland of the Houston Police Department
Homicide Division and Crime Scene Investigation unit, respectively, arrived shortly
thereafter and inspected the apartment. The investigation revealed blood, which DNA
testing later revealed belonged to appellant, on a washcloth. The investigation also
revealed a broken bathroom closet door; the contents of the closet had been removed.
 

          When Holford’s friend, Dickerson, learned of Cook’s death, he conveyed the
information to Holford. Dickerson was shocked that Holford was unsympathetic; he 
heard Holford say to appellant, “He heard about the move,” a phrase denoting some
illegal activity. The next day, Dickerson called the police and told them that
appellant and Holford were possible suspects. 
          Approximately a week after the murder, Christopher Vasquez, a friend of
Holford’s, went to appellant’s apartment, where he saw Cook’s Gucci hat and
approximately 15 lines worth of cocaine on the coffee table. Vasquez noticed
numerous articles of clothing that he had not previously seen, which surprised him
because he knew that appellant had been having money problems. 
          Officer Ramsey secured arrest warrants for Holford and appellant. The
warrants were executed at appellant’s apartment; Holford was expected to be inside
with appellant. Officer Ramsey secured appellant’s consent to search the apartment,
which revealed a loaded .380-caliber semi-automatic handgun, a Louis Vuitton wallet
containing $843 in cash and appellant’s identification, 22 butcher knives, and two
pocket knives, as well as appellant’s tennis shoes with dried blood on both soles. 
          After arresting appellant and Holford, Officer Ramsey and his partner took the
men to the Stafford Police Station for questioning. There, appellant revealed that he
“got the best of Cook,” knocked him out, and then went into the kitchen to take
Cook’s drugs and money. Appellant also stated that he saw Holford cutting Cook’s
throat and tying a phone cord around Cook’s throat, but stated that he asked Holford
to stop. Appellant conceded that he took $200 cash, drugs, clothing, and a .380 pistol
from Cook. He also admitted that he drove Holford home and returned to Cook’s
apartment to retrieve his cell phone. 
          An examination of Cook’s body revealed that he had dozens of blunt-force-trauma injuries on his face and body and a recently knocked-out tooth, and that he
had nearly been decapitated. Abrasions on Cook’s skin, including one above his left
eyebrow, were consistent with his having being struck by a wrench. A hole in Cook’s
right shoulder was consistent with the pointed end of the wrench’s having been driven
into the skin. 
Sufficiency of the Evidence
          In his sole point of error, appellant asserts that the evidence was factually
insufficient to support his conviction for capital murder. Specifically, appellant
contends that the “evidence linking [a]ppellant to the commission of murder was
extremely weak and at most showed that [a]ppellant, if guilty of anything, was guilty
only of robbery.”
A.      Standard of Review
          We review the factual sufficiency of evidence “neutrally, not in the light most
favorable to the verdict, and we will set aside the verdict ‘only if the evidence is so
weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence
is so strong that the standard of proof beyond a reasonable doubt could not have been
met.’” Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). 
Accordingly, when probative evidence supports the verdict, this Court must lend
great weight to the trier of fact’s determination and not intrude upon its role as the
sole judge of the weight and credibility of witness testimony. King v. State, 29
S.W.3d 556, 563 (Tex. Crim. App. 2000); see Valencia v. State, 51 S.W.3d 418, 423
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).
B.      Analysis
          Under the law applicable to this case, a person commits capital murder if he
intentionally or knowingly causes the death of an individual and intentionally
commits the murder in the course of committing or attempting to commit kidnapping,
burglary, robbery, aggravated sexual assault, arson, obstruction, retaliation, or
terroristic threat. Tex. Pen. Code Ann. §§ 19.02(b)(1), 19.03(a)(2) (Vernon Supp.
2004-2005). A person commits the offense of robbery if, in the course of committing
theft and with intent to obtain or to maintain control of the property, he intentionally,
knowingly, or recklessly causes bodily injury to another or intentionally or knowingly
threatens or places another in fear of imminent bodily injury or death. Id. § 29.02(a)
(Vernon Supp. 2004-2005). 
          Under the law of parties, a person is “criminally responsible as a party to an
offense” if the offense was committed “by his own conduct, by the conduct of another
for which he is criminally responsible, or by both.” Id. § 7.01(a) (Vernon 2003). 
Furthermore, “[e]ach party to an offense may be charged with the commission of the
offense.” Id. § 7.01(b) (Vernon 2003). A person is “criminally responsible” for an
offense committed by the conduct of another if, “acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense.” Id. § 7.02 (a)(2) (Vernon 2003).
          To establish guilt under the law of parties, the evidence must show that, at the
time of the offense, the parties were acting together, each contributing some part
towards the execution of their common purpose. Ransom v. State, 920 S.W.2d 288,
302 (Tex. Crim. App. 1994); Ahrens v. State, 43 S.W.3d 630, 633-34 (Tex. App.—
Houston [1st Dist.] 2001, pet. ref’d). In determining the scope of a defendant’s
participation in an offense, the fact finder may examine the events occurring before,
during, and after the commission of the offense and may rely on actions of the
defendant and circumstantial evidence that shows an understanding and common
scheme to commit the offense. Ransom, 920 S.W.2d at 302; Ahrens, 43 S.W.3d at
633-34. However, the cumulative effect of all the incriminating facts must be
sufficient to support the conviction. Berrios v. State, No. 01-04-00168-CR, 2005 WL
90962, at *6 (Tex. App.—Houston [1st Dist.] Jan.13, 2005, no pet.) (not designated
for publication) (quoting Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim. App. 
2004)). Intent may also be inferred from such circumstantial evidence. Id. at 50.
          Appellant contends that the evidence adduced at trial failed to show that he was
involved in the actual murder, but instead showed that Holford, acting alone,
murdered the victim. Appellant’s factual-sufficiency challenge relies primarily on the
following arguments: (1) the evidence merely established that appellant was present
when Holford murdered Cook; (2) Holford was the primary person who conducted
business with Cook; (3) Holford was the one who commented that he was thinking
of “jacking” Cook; and (4) the testimony of a defense witness, inmate Jaime
Martinez, corroborated appellant’s version of the facts with more credibility than that
of the State’s rebuttal witness, Karl Jones.
          Despite appellant’s contentions, the evidence amply supports appellant’s
conviction as a party to the offense. Proof beyond a reasonable doubt that appellant
actually caused the fatality is not necessary for a capital murder conviction when the
jury is charged on the law of parties. See e.g. Belyeu v. State, 791 S.W.2d 66, 72
(Tex. Crim. App. 1989). 
 

          The record reflects that appellant and Holford had discussed the possibility of
robbing Cook, due to their mutual need for money, and the fact that they would have
to kill Cook if they robbed him. Appellant admitted that he beat Cook until he was
unconscious and then went into the kitchen and took his property. Cook had a hole
in his shoulder and blunt-force injuries consistent with his having been struck by a
wrench of the type that appellant was known to carry. Furthermore, appellant was
seen after the murder with fresh scratches on his face and wearing Cook’s clothing. 
Forensic tests revealed that appellant’s blood was on a washcloth found in Cook’s
bathroom, Cook’s blood was on appellant’s shoes, and appellant’s bloody shoeprints
appeared on Cook’s kitchen floor. 
          The evidence also shows that, after appellant came out of the kitchen and saw
Holford cutting Cook’s throat and tying a phone cord around his neck, appellant not
only made no attempt to thwart the activity, but, rather, drove Holford home after the
murder was complete. Thus, the cumulative nature of appellant’s actions reflected
his intent to aid Holford in the commission of the robbery and murder. “Because the
jury returned a general verdict, and because the evidence is factually sufficient to
support a finding of guilt under section 7.02(b), the verdict must be upheld.” Rabbani
v. State, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992). We overrule appellant’s sole point of error.
Conclusion
          We affirm the judgment of the trial court.  

 




                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.2.