Opinion issued June 16, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00886-CR

———————————

Christopher Wiley, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 248th District Court 

Harris County, Texas



Trial Court Case No. 1177903

 



 

MEMORANDUM OPINION

          A
jury found appellant, Christopher Wiley, guilty of the offense of capital
murder,[1] and the trial court
assessed his punishment at confinement for life.  In his sole issue, appellant contends that
the evidence is legally insufficient to support his conviction.

          We
affirm.

Background

          Harris
County Sheriff’s Office (“HCSO”) Deputy R. Gonzalez testified that at 10:00
p.m. on August 2, 2008, he was dispatched to the scene of a homicide in a
trailer at the Burnaby Trails Trailer Park. 
Upon his arrival at the trailer, Gonzalez noted that its front doorframe
was broken and items were scattered around the floor in the living room.  To the right of the front door, Gonzalez found
an unfired “live 12-gauge shotgun shell,” and, along a wall, he noticed a
“large amount of blood spatter,” which, he opined, was possibly from “some type
of blunt force impact” to a human body.  The
doorframe leading into the bathroom of the master bedroom was broken,
consistent with the door having been “kicked open.”  There, Gonzalez saw additional blood droplets
on the floor and two fired shotgun shells. 
At the entry to the kitchen, Gonzalez discovered the body of the
complainant, Carl Bray, the landlord of the trailer park, with a gunshot wound
to his head.  In the bedroom, the drawers
of a large wooden trunk had been pulled out and the contents “rummaged through.”


Evangelo Diaz, who lived at the
trailer park with his mother, testified that on August 2, 2008, he, Devontae Hatchett,
Kristina Davis, and Tony Anders were in Diaz’s trailer watching television when
appellant, his girlfriend “Piggy,” Charles Battle, and another man, came to his
trailer.  Battle later walked out of the
trailer and returned with a case, from which he removed a “pump shotgun,” which
he “pumped” several times.  Battle,
appellant, and the third man with them discussed robbing the complainant.  Diaz noted that appellant “agree[d] with the
plan to rob” the complainant.  After Battle
said, “We do this for a living,” appellant suggested that they rob the
complainant “when it got dark.”  Diaz and
Hatchett left the trailer and went to the trailer of Genesis Mora.  Diaz, while later standing outside, saw the
three men who had been at his house earlier “run by.”  Battle was carrying the shotgun, and appellant,
who said, “We’ll catch you later,” had a “small bag of knick knacks” in his
hand.  The three men exited through the “people
gate” of the trailer park and left in a car that had been parked outside Diaz’s
trailer earlier.  

Jamie Calvary testified that on
August 2, 2008, she and the complainant were in his trailer when a “tapping on
the window” of the front door awakened them. 
After the complainant looked through a window, he returned to bed.  Later that evening, Calvary heard a “bang”
when the door to the trailer was “kicked in.” 
The complainant got out of the bed and told Calvary to “get down,” and
she “hid” on the side of the bed between the wall and the “pillow line.”  Calvary then heard the complainant “getting
beat” and being “thrown into the walls.”  She then heard some “crashes,” two gunshots,
and some men say that they needed to find the complainant’s cash and the keys
to his car.  The men went through the complainant’s
wooden trunk and a jar on his nightstand containing jewelry.  When Calvary heard the men leave, she grabbed
her cellular telephone and called for emergency assistance.  Calvary remained in the bedroom “curled up in
a ball on [her] knees” until the sheriff’s deputies arrived, and she learned
that the complainant had been shot. 
Calvary and the deputies went through the bedroom and bathroom to
determine what had been taken.  A small
wooden box containing approximately fifteen pieces of her jewelry, jewelry
belonging to the complainant, a firearm kept in the wooden trunk, an “Armani
watch,” and a gold ring were missing.  

Robin Freeman, an interpretation
manager for the Harris County Institute of Forensic Sciences (“HCIFS”), testified
that she conducted DNA testing on the crime scene samples gathered by the
sheriff’s deputies from the complainant’s trailer.  Freeman compared DNA samples taken at the
trailer with reference samples taken from appellant, and she concluded that appellant
was excluded as a possible contributor of the DNA on all the gathered samples.  

HCIFS Assistant Medical Examiner
Merill O. Hines testified that on August 3, 2008, she performed an autopsy on
the body of the complainant.  She noted
that the complainant had a shotgun wound to the back of his head and
lacerations, abrasions, and bruises on his face.  She also noted several abrasions and
contusions on his body that were consistent with a struggle or fight.  Hines opined that the cause of the complainant’s
death was a shotgun wound to the head.  

Clifton Pittman, an inmate in the
Harris County Jail, testified that he met appellant while they were in custody
awaiting trial on their respective cases. 
In the Harris County Jail, appellant told Pittman that he had been
involved in a robbery in which someone was killed in a trailer.  Appellant first told Pittman that when he
initially walked into the trailer, the man was already dead; however, approximately
three weeks later, appellant stated that he had “walked in on a struggle” over
a shotgun between the complainant and Battle. 
Appellant stated that he hit the complainant in the face, causing him to
let go of the shotgun.  When the complainant
ran towards the kitchen, Battle fired three shots.  Appellant also told Pittman that he took a
watch, a jewelry box, and a “couple antique guns” from the complainant’s
trailer.  He also explained that “Piggy”
waited in a car outside the trailer park until the men came out.  Appellant claimed that Kristina Davis and Evangelo
Diaz’s mother set up the robbery.  Pittman
further testified that he informed his lawyer that he had information
concerning appellant’s case, and he decided to testify about appellant’s
admissions because “if it was someone from [his] family, [he would] want
someone to do the same thing” and it “might help” him “get a better deal” on
his pending case.  

HCSO Sergeant A. Beall, who had
arrived to investigate the robbery and murder of the complainant, testified
that he and other deputies searched the apartment of appellant’s
girlfriend.  During the search, Beall
found appellant’s identification and a “pawn ticket” inside of a wallet.  When Beall went to the pawn shop, he learned
that the ticket was for a “men’s Armani watch and a woman’s ring” that
appellant had pawned on August 3, 2008.  During
the course of his investigation, Beall had an opportunity to record a video
tape of appellant’s statement.  

In his video-recorded statement,
appellant explained that on August 2, 2008, he went to the trailer park with Battle,
Jaquest Evans, and Piggy.  Battle had a
“black pump gun” with him, and appellant gave him a bag in which to put the
shotgun.  The group first went to the
trailer of one of Piggy’s friends, where they talked about robbing the
complainant.  Then, the group went to the
complainant’s trailer, and appellant, who knew that Battle had the shotgun with
him, was present when Battle kicked in the front door.  Once the men were inside the trailer,
appellant heard Battle shoot the complainant. 
Appellant took a jewelry box and jewelry from the bathroom, and he went
through the wooden chest.  After taking
the jewelry, appellant left with Piggy. 
Appellant noted that he had blood on his clothing, and he later threw
away his clothes.  Appellant also
admitted to pawning a watch and ring that he had taken from the complainant’s
trailer.  

Standard of Review

We review the legal sufficiency of the evidence by
considering all of “the evidence in the light most favorable to the prosecution”
to determine whether “any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.”  Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct.
2781, 2788–89 (1979).  Evidence is legally
insufficient when the “only proper verdict” is acquittal.  Tibbs
v. Florida, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982).  Our role is that of a due process safeguard,
ensuring only the rationality of the trier of fact’s finding of the essential
elements of the offense beyond a reasonable doubt.  See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  We give deference to
the responsibility of the fact finder to fairly resolve conflicts in testimony,
to weigh evidence, and to draw reasonable inferences from the facts.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  However, our duty requires us to “ensure that
the evidence presented actually supports a conclusion that the defendant
committed” the criminal offense of which he is accused.  Id. 

Sufficiency of the Evidence

In his sole issue,
appellant argues that the evidence is legally insufficient to support his
conviction because there is no evidence that he is the actual person who shot
the complainant or is criminally responsible for the conduct of the person who
shot the complainant.  

A person commits the
offense of capital murder if he
intentionally or knowingly causes the death of an individual and does so in the
course of committing or attempting to commit the offense of robbery.  Tex. Penal Code
Ann. § 19.02(b)(1) (Vernon
2003), § 19.03(a)(2) (Vernon Supp. 2010); Sholars v. State, 312 S.W.3d 694, 703 (Tex. App.—Houston
[1st Dist.] 2009, pet. ref’d).  A person commits the offense of robbery if, in
the course of committing theft, and with the intent to obtain or maintain
control of property, he intentionally or knowingly threatens or places another
in fear of imminent bodily injury or death. 
Tex.
Penal Code Ann. § 29.02(a)(2) (Vernon 2003).  

Under the law of parties, a person is “criminally
responsible” as a party to an offense if the offense was committed “by his own
conduct, by the conduct of another for which he is criminally responsible, or
by both.”  Id. § 7.01(a).  Each party to an offense may be charged with
commission of the offense.  Id. §
7.01(b).  A person is “criminally
responsible” for an offense committed by the conduct of another if, acting with
intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the
offense.  Id. § 7.02(a)(2).  Under section 7.02(b), if, in the attempt to
carry out a conspiracy to commit one felony, another felony is committed by one
of the conspirators, all conspirators are guilty of the felony actually
committed, though having no intent to commit it, if the offense was committed
in furtherance of the unlawful purpose and was one that should have been
anticipated as a result of the carrying out of the conspiracy.  Id.
§ 7.02(b).  A person commits criminal
conspiracy if, with intent that a felony be committed, he agrees with one or
more persons that they or one or more of them engage in conduct that would
constitute the offense.  Id. § 15.02(a)(1).  Thus, if the evidence is sufficient to
support appellant’s conviction as a party under either section 7.02(a)(2) or
7.02(b), we must uphold the conviction.  Swearingen v. State, 101 S.W.3d 89, 95
(Tex. Crim. App. 2003).  

To establish guilt under the law of parties, the evidence
must show that, at the time of the offense, the parties were acting together,
each contributing some part towards the execution of their common purpose.  See Ransom v. State, 920
S.W.2d 288, 302 (Tex. Crim. App. 1994); Ahrens v. State, 43
S.W.3d 630, 633–34 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  In determining whether a defendant
participated in an offense as a party, the fact finder may examine the events
occurring before, during, and after the commission of the offense and may rely
on actions of the defendant that show an understanding and common design to
commit the offense.  Ransom, 920
S.W.2d at 302;
Ahrens, 43
S.W.3d at 634.
 Each fact need not point directly and
independently to the guilt of the defendant, as long as the cumulative effect
of all the incriminating facts are sufficient to support the conviction.  Guevara v State, 152
S.W.3d 45, 49 (Tex. Crim. App. 2004); see Alexander v. State, 740
S.W.2d 749, 758 (Tex. Crim. App. 1987).  Intent may also be
inferred from circumstantial events, such as acts, words, and the conduct of
the defendant.  Guevara, 152
S.W.3d at 50;
Patrick v. State, 906
S.W.2d 481, 487 (Tex. Crim. App. 1995).  We note that proof
beyond a reasonable doubt that appellant actually fired the fatal shots is not
necessary to support a capital murder conviction when, as here, the jury was
charged on the law of parties.  Rabbini v. State, 847
S.W.2d 555, 558
(Tex. Crim. App. 1992).

In support of his sufficiency challenge, appellant asserts
that it is clear that he was not the actual shooter of the complainant.  He argues that his “vicarious liability”
under section 7.02(a)(2) “extends no further than that which he specifically
intended to promote or assist— an aggravated robbery” because there is no
evidence he ever “solicited, encouraged, directed, aided, or attempted to aid
[Battle] to commit the offense of capital murder during the course of the
robbery.”  He further argues that under
section 7.02(b), the evidence is insufficient to sustain his conviction because
there is no evidence that he should have anticipated the murder of the
complainant.

The evidence, when viewed in the light most favorable to the
prosecution, supports appellant’s conviction under the conspiracy theory of the
law of parties.  The record shows that
the men, while at Diaz’s trailer, discussed their robbery of the
complainant.  Battle then went to his car
and retrieved a shotgun.  When back
inside Diaz’s trailer, Battle pumped the shotgun several times while the group
continued discussing the robbery.  After Battle
stated, “We do this for a living,” appellant suggested that they wait until
after dark to rob the complainant.  Appellant,
as he admitted in his statement, then went with an armed Battle and another man
to the complainant’s trailer.  After they
entered the trailer, appellant, as he admitted to Pittman, hit the complainant
in the face during a struggle over the shotgun. 
Appellant heard Battle shoot the complainant, and he later admitted that
he had blood on his clothing.  After hearing
the gunshots, appellant took a jewelry box and several pieces of jewelry from
inside the complainant’s trailer.  And he
was seen running from the trailer carrying several items, some of which he
later pawned.  Thus, there is sufficient
evidence to support the jury’s implied finding that appellant and the two other
assailants agreed to and, in fact, acted in concert to rob the
complainant.  

There is also sufficient evidence to support the jury’s
implied finding that appellant should have anticipated that someone could be
killed as a result of carrying out the robbery. 
Appellant asserts that there is no evidence that he knew that Battle
“had a propensity to shoot people during robberies.”  However, knowledge of a co-conspirator’s
violent propensity is not an element of the offense, “so the lack of evidence
of such knowledge is not dispositive of sufficiency.”  See
Hooper v. State, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).  The State, under section 7.02(b), was only
required to prove that the complainant’s murder should have been anticipated as
a result of carrying out the conspiracy to commit robbery.  See
Tex. Penal Code Ann. § 7.02(b); Barnes v. State, 56 S.W.3d 221, 229
(Tex. App.—Fort Worth 2001, pet. ref’d). 
Here, appellant knew that Battle was armed with a shotgun.  Robbery at gunpoint is sufficient, standing
alone, to make the shooting an act that should have been anticipated, and, when
an individual is shot, it must also be anticipated that the person may be
injured or die as a result of the shots. 
See Williams v. State, 974
S.W.2d 324, 330 (Tex. App.—San Antonio 1998, pet. ref’d) (holding that killing
during pawnshop robbery was foreseeable where at least one conspirator was present
with firearm).  Texas courts have consistently
held that when a murder occurs in the course of a conspiracy to commit robbery,
all parties to the robbery are guilty of murder.  See
Green v. State, 682 S.W.2d 271, 285–86 (Tex. Crim. App. 1984); Longoria v. State, 154 S.W.3d 747, 755
(Tex. App.—Houston [14th Dist.] 2004, pet. ref’d); see also Ruis v. State,
579 S.W.2d 206, 209 (Tex. Crim. App. 1979); King
v. State, 502 S.W.2d 795, 797–98 (Tex. Crim. App. 1974).  Courts have also consistently held that conspirators
should anticipate that a murder could occur in the course of the commission of
a robbery when they have knowledge that a co-conspirator is carrying a firearm.  See
Love v. State, 199 S.W.3d 447, 453 (Tex. App.—Houston [1st Dist.] 2006,
pet. ref’d); Longoria, 154 S.W.3d at
756–57.  Appellant knew that Battle
retrieved a shotgun when the men began discussing the robbery of the
complainant, and he knew that Battle brought the shotgun to the robbery.  Moreover, appellant admitted to Pittman that
he struck the complainant in the head during a struggle over the shotgun.  

Given this evidence, a reasonable trier of fact could have
concluded that appellant should have anticipated a murder as a possible result
of his agreement to rob the complainant. 
Accordingly, we hold that the evidence is legally sufficient to support appellant’s
conviction of the offense of capital murder.

We overrule appellant’s sole issue.  

Conclusion

          We
affirm the judgment of the trial court.  

 

 

                                                                   Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Bland, and Massengale.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann § 19.03
(Vernon Supp. 2010).