NO. 07-01-0426-CR



IN THE COURT OF APPEALS


 

FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 29, 2003



______________________________




ROMARCUS DEON MARSHALL, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 179TH DISTRICT COURT OF HARRIS COUNTY;



NO. 833880; HONORABLE J. MICHAEL WILKINSON, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

OPINION


 Appellant Romarcus Deon Marshall appeals from his conviction for capital murder. 
By two issues he asserts that the evidence is factually insufficient to support the jury's
verdict. We affirm.


BACKGROUND

 In the early morning hours of January 18, 2000, three men forced their way into the
trailer residence of Anastacio Sandoval. All of the men were armed with firearms and one
of them, a black male, was wearing a bulletproof vest. Sandoval, Jose Murillo, Esmerelda
Cordero and Emory Zepeda were asleep inside the trailer. Murillo, who had been sleeping
in the living room, recognized one of the men as Brian Grabow. While Grabow held
Murillo in the living room at gunpoint, the black male entered the bedroom where Sandoval
and Cordero were sleeping and the other white male, later identified as Brad Hanes,
entered the northern bedroom where Zepeda was located. The three intruders then
proceeded to loot the trailer, taking money, drugs, and other items including some tire rims
and a shotgun. As Hanes, Grabow and the black male began to leave the residence,
Sandoval stood up and approached Hanes. Hanes was holding an assault rifle pointed
at Sandoval. The rifle discharged and Sandoval collapsed, having been shot in the chest. 
He died at the scene. The intruders fled in a dark colored SUV-type vehicle. 

 Harris County Sheriff's Office detectives Wayne Kuhlman and Larry Davis
investigated Sandoval's death. From witness statements, they identified Grabow as a
suspect. Grabow was arrested the same day, and he gave a statement implicating
appellant. A warrant was obtained for appellant's arrest. Kuhlman and other detectives
drove to appellant's apartment, where appellant was located and gave consent for a
search of his apartment. 

 In searching appellant's apartment, the officers found five firearms, including an
assault rifle which was later identified by the State's expert witness on ballistics as being
the weapon that fired the bullet that killed Sandoval. The officers also found a bulletproof
vest belonging to appellant. 

 After receiving information that the shotgun taken from Sandoval's residence might
be located in appellant's apartment, a second written consent to search the apartment was
obtained from appellant. The shotgun was found on a shelf over the refrigerator in the
kitchen.

 Appellant was indicted for capital murder. He pled not guilty. Trial was to a jury. 
The State's theory was that appellant was criminally responsible for the killing of Sandoval
by Hanes because appellant was part of a conspiracy with Hanes to commit the felony
offense of robbery of Sandoval; during the course of the robbery Hanes intentionally
caused Sandoval's death by shooting him; and the killing was in furtherance of committing
the robbery and should have been anticipated as a result of the carrying out of the
conspiracy. See Tex. Pen. Code Ann. § 7.02 (Vernon 2003). (1) 

 The surviving victims of the robbery were among the State's witnesses, as was
Grabow. Appellant testified in his defense. The victims could not identify appellant as
having participated in the robbery, although they testified that one of the robbers was a
black male. Grabow testified that appellant was the black male who participated in the
robbery. According to Grabow, Hanes asked him if Grabow could score some dope. 
Grabow told Hanes that he could get some dope from Sandoval, whereupon Hanes
suggested that they just rob Sandoval instead. Grabow agreed and later the two of them
and a woman named Crystal went to appellant's apartment. Grabow testified that Hanes
was armed with a nine-millimeter handgun at this time. 

 According to Grabow, when they arrived at appellant's apartment, Hanes went
inside by himself. After approximately 15 minutes, Crystal also went inside the apartment. 
After a few more minutes, appellant, Hanes and Crystal all came out of the apartment. 
Appellant was carrying two guns. Appellant, Grabow, Hanes and Crystal got in appellant's
blue SUV and they drove to Sandoval's residence. Grabow testified that while they were
en route to Sandoval's trailer residence, appellant asked how many people lived there,
asked whether they had any guns, and asked where they kept the dope and money. 
Grabow supplied the information requested by appellant, and also opined that the persons
in the trailer "ain't just weak. They was going to probably try to defend theirself [sic]." 
Grabow stated that appellant was wearing a bulletproof vest. 

 According to Grabow, appellant pulled the vehicle into the driveway, the three men
approached the front door, appellant kicked the door in, the intruders entered with guns
drawn and went into different rooms. Grabow testified that he could hear appellant in a
bedroom asking Sandoval where the dope was. Grabow testified that appellant forced
Sandoval and Cordero into the living room and forced them to lie down on the floor. 
Appellant then went into the northern bedroom and removed some tire rims. As Hanes and
Grabow were helping appellant take the rims out to his vehicle, Sandoval stood up and
began approaching Hanes, who was standing at or about the threshold of the outside door. 
Hanes was pointing the gun towards Sandoval's chest when the gun discharged and
Sandoval was shot. Grabow testified that he never saw Sandoval grab the gun. 

 According to Grabow, appellant, Hanes, Grabow and Crystal then drove back to
appellant's apartment. Later, appellant took out $350 and told them to split it up. Grabow
took out a "quarter of crack" which he had stolen during the robbery and they split that up
also. 

 Dr. Patricia Moore of the Harris County medical examiner's office autopsied
Sandoval's body and testified that Sandoval died from a single gunshot wound to the
chest. Moore testified that the bullet was fired from within 18 inches of Sandoval's chest
and traveled right to left and front to back on a downward trajectory. She testified that the
exit wound was about six inches lower than the entrance wound, which would be
consistent with either the gun being angled downward or Sandoval leaning forward when
the gun was fired.

 Appellant denied involvement in a plan to rob Sandoval, in the robbery itself, or in
the shooting. He testified that his involvement in the affair was limited to following Hanes
and Grabow to Sandoval's residence to retrieve his gun, which he testified Hanes and
Grabow removed from his residence without permission. Appellant testified that he took
another one of his guns with him. He testified that he never entered Sandoval's residence
and that it must have been a different black male wearing a bulletproof vest that committed
the robbery with Hanes and Grabow. He testified that while he was outside Sandoval's
trailer he heard a gunshot and he then saw Hanes and Grabow take off running. He said
he retrieved his gun from Hanes and then he saw Hanes and Grabow get in a Ford
Thunderbird and drive off. Appellant saw a black male sitting in the Thunderbird on the
passenger side. Appellant stated that he then left and drove back to his residence where
he stored his guns. He testified that he then drove to a residence where Hanes and
Grabow were; he got into an altercation with Hanes; and Hanes sustained a broken wrist. 
He testified that Grabow grabbed a shotgun, appellant took the shotgun away from
Grabow, and appellant then returned to his residence with the shotgun he took from
Grabow. 

 The jury convicted appellant of capital murder. He was sentenced to life
imprisonment. He appeals via two issues. ISSUES

 By his first issue, appellant alleges that the evidence was factually insufficient to
support a finding that appellant's co-conspirator Hanes intended to cause Sandoval's
death. By his second issue, appellant alleges that the evidence was factually insufficient
to support a finding that appellant should have anticipated Sandoval's murder as a result
of the carrying out of a conspiracy to rob Sandoval. We will analyze appellant's issues
together. 

STANDARD OF REVIEW and LAW

 A factual sufficiency review of the evidence begins with the presumption that the
evidence supporting the jury's verdict was legally sufficient under the test outlined in
Jackson v. Virginia, 443 U.S. 307, 319-20, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). 
See Clewis v. State, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). Factual sufficiency
review is accomplished without viewing the evidence in the light most favorable to the
prosecution, as the evidence is viewed in determining legal sufficiency. Id. The evidence
is factually sufficient to support the verdict if the verdict is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Id. Stated
otherwise, the evidence is not factually sufficient to support a conviction if the appellate
court determines, after viewing all the evidence, both for and against the finding in a
neutral light, that the proof of guilt is so obviously weak as to undermine the confidence
in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). 

 A person commits murder under PC § 19.02(b)(1) if the person intentionally or
knowingly causes the death of an individual. PC § 19.02(b)(1). A person commits capital
murder if he intentionally or knowingly commits murder as defined by PC § 19.02(b)(1) and 
"the person intentionally commits the murder in the course of committing or attempting to
commit . . . robbery." Id. § 19.03(a)(2). 

 A person may be convicted as a party to an offense if the offense is committed by
his own conduct, by the conduct of another for whom he is criminally responsible, or both. 
Id. § 7.01(a). PC § 7.02(a)(2) provides that a person is criminally responsible for an
offense committed by the conduct of another if, acting with the intent to promote or assist
the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense. Id. § 7.02(a)(2). 

 A person is also responsible for the conduct of another, if, in an attempt to carry out
a conspiracy to commit one felony offense, another felony is committed by one of the
conspirators acting in furtherance of the conspiracy, and the other offense should have
been anticipated as a result of the carrying out of the conspiracy. Id. § 7.02(b).

 Intent is a fact question for the jury. See Robles v. State, 664 S.W.2d 91, 94
(Tex.Crim.App. 1984). Intent may be inferred from the words and conduct of an accused. 
Hernandez v. State, 819 S.W.2d 806, 810 (Tex.Crim.App. 1991). The jury, which is
exclusively empowered to determine the issue of intent, may also infer intent to kill from
the use of a deadly weapon. Mercado v. State, 718 S.W.2d 291, 295 (Tex.Crim.App.
1986); Ahrens v. State, 43 S.W.3d 630, 634 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd);
Smith v. State, 56 S.W.3d 739, 745 (Tex.App -Houston [14th Dist.] 2001, pet. ref'd). A
firearm is a deadly weapon, per se. PC § 1.07(a)(17)(A); Hill v. State, 913 S.W.2d 581,
590 (Tex.Crim.App. 1996). 

ANALYSIS AND DISCUSSION

 In his brief, appellant's counsel cites Clewis in reference to the standard of review
for factual sufficiency claims. In the portion of appellant's brief discussing his first factual
sufficiency issue, appellant cites PC § 19.03(a)(2) in identifying the element on which the
evidence is alleged to be insufficient - in this case the element of intent. Other than Stone
v. State, 823 S.W.2d 375 (Tex.App.-Austin 1992, pet. ref'd), which is cited because the
portion of Clewis cited by appellant quotes directly from Stone, appellant cites no other
authority in support of his argument that the evidence is factually insufficient to support a
finding of intent. The remainder of appellant's presentation consists of arguing the facts
of the case. Completely absent is discussion of the law which is applicable to the case
and discussion of the application of the law to the specific facts of the case.

 In the portion of appellant's brief discussing his second factual sufficiency issue, the
only authority cited by appellant is PC § 7.02(b) ("Criminal Responsibility for Conduct of
Another"). Again absent is any discussion of case law which is applicable to the case and
any discussion of the application of law to the specific facts of the case. 

 We find that the factual sufficiency claims presented by appellant have been
insufficiently briefed and present nothing for review. See, e.g., Passmore v. Estelle, 607
F.2d 662, 663-64 (5th Cir. 1979); cert. denied, 446 U.S. 937 (1980); McDuff v. State, 939
S.W.2d 607, 613 (Tex.Crim.App. 1997); Patterson v. State, 46 S.W.3d 294, 305
(Tex.App.-Fort Worth 2001, no pet.); Roise v. State, 7 S.W.3d 225, 232 (Tex.App.-Austin
1999, pet. ref'd).

 Nevertheless, we will review appellant's issues. 

 In his brief, appellant refers to portions of Grabow's testimony. In particular,
appellant argues that Grabow's testimony that Grabow decided to rob Sandoval because
he thought that Sandoval would not call the police if all the robbers took was drugs and
money demonstrates that killing Sandoval was not part of their original plan. Appellant
also points to the fact that the conspirators chose to rob Sandoval's residence at night
when the occupants were likely to be asleep as demonstrating that the conspirators did
not intend to kill anyone. Appellant further argues that the evidence shows that the
robbery was essentially over by the time Sandoval stood up and approached Hanes. He
contends that the medical examiner's testimony showed that Sandoval was lunging toward
Hanes at the time the fatal shot was fired and that there simply was not time for Hanes to
have formed the intent to kill Sandoval. Finally, appellant cites evidence of the sudden
silence of the conspirators in reaction to the gunshot as evidence that the conspirators
were surprised by Hanes's shooting of Sandoval, and as evidence, therefore, that none
of them, including Hanes, intended to kill Sandoval. 

 In essence, what appellant proposes are alternative hypotheses that, if accepted
by the jury, would have supported the jury's refusal to find Hanes intended to kill Sandoval. 
Because we must consider all the evidence in conducting a factual sufficiency review, we
necessarily consider any reasonable alternative hypotheses raised by the evidence. Ates
v. State, 21 S.W.3d 384, 391 (Tex.App.-Tyler 2000, no pet.); Richardson v. State, 973
S.W.2d 384, 387 (Tex.App.-Dallas 1998, no pet.). The existence of alternative reasonable
hypotheses may be relevant to, though not necessarily determinative of, a factual
sufficiency review. See Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). The
mere existence of a reasonable alternative hypothesis, however, does not render the
evidence factually insufficient. Ates, 21 S.W.3d at 391; Richardson, 973 S.W.2d at 387.

 Clearly the testimony of appellant and Grabow are in conflict. The jury had to
determine the credibility of the two witnesses, in conjunction with the other evidence. And,
when competing or conflicting evidence and inferences exist, we defer to the jury's
resolution of such conflicts if the jury's determination is supported by factually sufficient
evidence. See, e.g., Park v. State, 8 S.W.3d 351, 352 (Tex.App.-Amarillo 1999, no pet.);
Hall v. State, 970 S.W.2d 137, 142 (Tex.App.-Amarillo 1998, pet. ref'd). 

 The evidence, part of which we have recited above, is sufficient for a rational jury
to have concluded that appellant, Grabow and Hanes conspired to commit a robbery of
Sandoval's residence and took loaded firearms with them to aid in carrying out their plan. 
A jury could have further concluded from the evidence that appellant supplied some of the
firearms used in the commission of the robbery and actively participated in the robbery's
planning and commission. Thus, the evidence is factually sufficient to support a finding
that appellant was present at the commission of the robbery and encouraged its
commission. It was also reasonable for the jury to infer Hanes's intent to kill Sandoval by
Hanes's use of a deadly weapon, and that appellant was a conspirator to commit the
offense of robbery and that appellant should have anticipated Sandoval's murder in
furtherance of the conspiracy to commit the robbery. See, e.g., Holiday v. State, 14
S.W.3d 784, 790 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). After viewing all the
evidence, both for and against the finding in a neutral light, we do not conclude that the
proof of guilt is so obviously weak as to undermine the confidence in the jury's
determination, or that the proof of guilt is greatly outweighed by contrary proof. See
Johnson, 23 S.W.3d at 11.

 Accordingly, the evidence is factually sufficient to support the verdict. Appellant's
first and second issues are overruled. 

 For the foregoing reasons, the judgment of the trial court is affirmed. 

 Phil Johnson

 Chief Justice



Do not publish. 


1. Further references to a section of the Penal Code will be by referencing "PC §_."


o-level-tab-stop:.25in;
 mso-level-number-position:left;
 margin-left:.25in;
 text-indent:3.5in;
 mso-ansi-font-size:11.0pt;
 color:black;
 position:relative;
 top:0pt;
 mso-text-raise:0pt;}
@list l0:level8
 {mso-level-number-format:alpha-lower;
 mso-level-tab-stop:.25in;
 mso-level-number-position:left;
 margin-left:.25in;
 text-indent:4.0in;
 mso-ansi-font-size:11.0pt;
 color:black;
 position:relative;
 top:0pt;
 mso-text-raise:0pt;}
@list l0:level9
 {mso-level-number-format:roman-lower;
 mso-level-tab-stop:.25in;
 mso-level-number-position:left;
 margin-left:.25in;
 text-indent:4.5in;
 mso-ansi-font-size:11.0pt;
 color:black;
 position:relative;
 top:0pt;
 mso-text-raise:0pt;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->








NO. 07-10-0461-CR

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 

JULY 25, 2011

________________________

 

DEMETRA
DESHONNE MITCHELL,  

 

                                                                                         Appellant

v.

 

THE STATE OF
TEXAS,  

 

                                                                                         Appellee

_________________________

 

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

 

NO. 10-04-7058; HONORABLE PAT PHELAN, PRESIDING

__________________________

 

Memorandum Opinion

__________________________

 

Before QUINN, C.J., CAMPBELL,
J., and BOYD, S.J.[1]

Demetra Deshonne Mitchell
was convicted after a jury trial of possession of a controlled substance
(cocaine) with intent to deliver in a drug free zone.  In seeking to reverse that conviction, she
contends 1) the trial court erred in admitting extraneous offenses after a
witness had allegedly opened the door to character evidence by describing
appellant as a working class citizen, 2) the trial court erred in refusing to
admit evidence of threats allegedly made by the States main witness against
other witnesses in the case, and 3) appellant received ineffective assistance
of counsel when her attorney failed to recognize that the door had been opened
to the admission of the aforementioned extraneous offenses and failed to
request a limiting instruction as to that evidence.  We affirm the judgment. 

            Background

            On October 27, 2009, Vincentia
Johnson, appellants cousin, agreed to assist Officer Shaun Wilson in
purchasing crack cocaine from appellant in exchange for his help in reducing or
dismissing a drug charge pending against Vincentia.  She called appellant to confirm that
appellant had cocaine at her residence.  Officers
then searched Vincentia and her car, and she was outfitted with an audio
recording device.  She was also given
$120 to purchase a bill, which is street language for $100 of drugs.  Vincentia was followed by officers to
appellants residence where she was observed entering it.  When she came out, she had cocaine and $20 on
her.

            Issue 1  Admission of
Character Evidence

            In her first issue, appellant
contends that the use of the phrase working class citizen to describe her did
not open the door to admission by the State of evidence    impugning her character.[2]  The trial court disagreed, which resulted in
the State proffering evidence of her involvement in various extraneous
offenses.  We overrule the issue.

            The phrase in question was used by a
defense witness, Jakiki Garrett, who was living with
appellant at the time of the offense and being examined by defense
counsel.  Its use arose during the
following exchange:

Q.  During the
time you stayed with [appellant], did you ever see drugs or a scale?

            

A.   
No.

 

           Q. 
If you would have seen drugs, what would you have done?

            A. 
I couldnt have been around it. 

            Q. 
Why not?

A.  I just - - I
just got out of trouble for that, you know. 
And, you know, to my common knowledge, you know, I was trying to change
myself, and I was working.

 

            I seen her go to work every day.  We had been at the house every day after
work.  She let me in.  I took my showers, or whatever.  She drove back and forth to work.  As far as Im concerned, she was a working-class
citizen.

 

            Q. 
She was what?

 

            A. 
She was a working-class citizen.

(Emphasis
added).      

We review the trial courts decision to admit or exclude
evidence under the standard of abused discretion.  Martin
v. State, 173 S.W.3d
463, 467 (Tex. Crim. App. 2005).  Thus, we cannot hold
that any error occurred unless the decision fell outside the zone of reasonable
disagreement.  Jordan v. State, 271 S.W.3d 850, 855 (Tex. App.
Amarillo 2008, pet. refd).    

Next, we note that a party opens the door to otherwise
inadmissible evidence by leaving a false impression with a jury that invites
the other side to respond.  Hayden
v. State, 296 S.W.3d
549, 554 (Tex. Crim. App. 2009).  According to
appellant, referring to her as a working class citizen was not a comment upon
her good character but rather conveyed the impression that she simply was
someone who had a job and maintained the social status of working class.   

Admittedly, the statement is subject to interpretation.  One such interpretation was that mentioned by
appellant.[3]  Another, was the allusion
to her being an honest, law abiding, and hard-working person rather than a drug
dealer.  Moreover, before the comment was
made, the witness had testified about how appellant was his friend, how he
had recently been released from jail, had nowhere to go, and how appellant
took [him] in while he was getting on [his] feet.  He had also attempted to exculpate appellant
and discredit the testimony of Vincentia by denying that drugs and drug paraphernalia
were present when she was there.  Given
these circumstances, one could reasonably infer that the witness was attempting
to help his friend by portraying appellant as someone of good character.  At least, interpreting the use of the phrase
in such a manner would fall within the zone of reasonable disagreement.  Therefore, the trial court did not err in concluding
that appellants character for being honest and law-abiding had been placed in
debate.[4]  See Bass v. State, 270 S.W.3d 557, 563 (Tex. Crim. App.
2008) (holding that argument that the defendant was a pastor and minister and
the real deal and the genuine article opened the door to extraneous
offenses); Harrison v. State, 241 S.W.3d 23, 27-28 (Tex. Crim. App. 2007) (holding that
testimony that the defendant was a good and sweet boy opened the door to
extraneous offenses); Fuentes v. State, 991 S.W.2d 267, 280 (Tex. Crim. App.
1999) (holding that answers to questions as to whether the witness had ever
seen a person misbehave or cause trouble clearly asked about character).   

Issue 2  Evidence of
Threats

Via his second issue, appellant contends that the trial court
should have allowed her to proffer evidence illustrating that Vincentia
threatened to assault any witness testifying on appellants behalf.  The evidence allegedly affected Vincentias
credibility and, therefore, was admissible. 
We overrule the issue.  

The possible animus, motive, ill will, or bias of a
prosecution witness is not irrelevant, and the defendant is entitled, subject
to reasonable restrictions, to show any relevant fact that might tend to
establish the same.  Billodeau v.
State, 277
S.W.3d 34, 42-43
(Tex. Crim. App. 2009);[5]
Tex. R. Evid. 613(b).  Yet, whether this rule obligated the trial
court to admit evidence of the threat is not a matter we need to decide.  This is so because appellant was not harmed
by exclusion, even if the trial courts decision was wrong.  

That which appellant sought to do with the evidence was done
via other means.  Indeed, we are told by
appellant that Vincentias purported threat established a bias favoring the
State.  And, that bias arose from her
desire to forego incarceration for a separate offense and otherwise remain free
to care for her newly born child. 
Apparently, the State or police had struck a deal with her to forego
prosecution if she became a confidential informant.  This, undoubtedly, was an offer she thought
desirable since she had already lost one child while she served a previous
stint in prison. The deal allowed her to care for the new one.  Moreover, all this information, save for
evidence of the threat, was before the jury. 
So, appellant not only had but also pursued the opportunity to discredit
Vincentia by showing that she had a reason for working with and testifying
favorably for the State.  

Issue 3  Ineffective
Assistance of Counsel

Finally, appellant contends that her counsel was ineffective
by eliciting testimony that opened the door to the character evidence addressed
under issue one and in failing to request a limiting instruction with respect
to that evidence.  We overrule the issue.

To prove a claim of ineffective assistance, one must
establish not only that counsels performance was deficient but that she
suffered prejudice as a result of it.  Cannon
v. State, 252 S.W.3d
342, 348-49 (Tex. Crim. App. 2008).  In
determining whether that burden has been met, we presume (until rebutted) that
counsel had legitimate strategies for his actions, Mata
v. State, 226 S.W.3d
425, 431 (Tex. Crim. App. 2007), and that presumption cannot generally be
overcome absent evidence in the record of the attorneys reasons for his
conduct.  Ex
parte Niswanger, 335 S.W.3d 611, 615 (Tex. Crim. App. 2011).  


Initially, we note that appellants question to the witness
related to what the witness would have done if he had observed drugs in
appellants house.  It was not designed
on its face to elicit the response that appellant was a working class
citizen.  See Harrison v.
State, 241 S.W.3d at 27
(noting that defendants counsel did not intentionally elicit testimony that
defendant was a good and sweet person). 
Indeed, it can be said that by asking the question, she was what?
counsel was surprised by the witness statement.  We, therefore, cannot say that he performed
deficiently by asking the question he did or by seeking to open the door to
adverse character evidence.      

We further note that the record fails to reveal why counsel
did not ask that the witness comment be struck or why he did not request a
limiting instruction of any type viz the jurys consideration of the
evidence of extraneous offenses.  As for
the former, it may be that counsel initially viewed the purportedly unexpected
comment as favoring his client.  As for
the latter accusation of deficient conduct, counsel may have opted to remain
silent to avoid placing further attention upon the evidence in question.  Hill v. State, 303 S.W.3d 863, 879 (Tex. App.Fort
Worth 2009, pet. refd) (stating that counsel is not
necessarily deficient in failing to request an instruction with respect to
extraneous offenses because it is possible he did not want to draw further
attention to those offenses).  Yet, these
explanations for counsels conduct are mere guesses since the record omits
evidence as to his motives or strategies. 
And, because the latter could be legitimate, we cannot say that
appellant proved a case of ineffective assistance.   

The judgment is affirmed. 

 

                                                                        Brian
Quinn 

                                                                        Chief
Justice  

Do
not publish.                 











[1]John T. Boyd, Senior Justice, sitting by assignment.





[2]The
evidence of extraneous offenses admitted by the State consisted of testimony
that appellant had been arrested twelve times. 
Those arrests related to the offenses of injury to a child, assault
causing bodily injury, aggravated assault causing serious bodily injury,
multiple thefts, multiple drug possessions, and assault.  Appellant had also been in the penitentiary
for seven years and had her probation revoked. 





[3]Garrett
testified later that he called appellant a working class citizen because he
had always known her to have a job.





[4]To
the extent that appellant also argues that the evidence admitted to rebut the
allegedly false impression was excessive, no objection expressing that
complaint was uttered at trial.  So, it
was not preserved for review.  Heidelberg v. State, 144 S.W.3d 535, 537
(Tex. Crim. App. 2004) (holding that the grounds asserted on appeal must
comport with those mentioned at trial).





 

[5]Appellant
relies upon Bilodeau v. State, 277 S.W.3d 34
(Tex. Crim. App. 2009) in support of her argument that the evidence is
admissible.  However, that case involved
a threat made by a child complainant prior to a molestation trial to falsely
accuse two neighbors of molestation. Id. at 38.  Those facts are not analogous to those before
us.