Affirmed and Memorandum Opinion filed February 1, 2005









Affirmed
and Memorandum Opinion filed February 1, 2005.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00025-CR

_______________

 

CHRISTOPHER MENDEZ, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

__________________________________________________

 

On Appeal from the 183rd District Court

Harris County, Texas

Trial Court Cause No. 915,254

__________________________________________________

 

M E M O R A N D
U M   O P I N I O N

A jury found appellant, Christopher Mendez, guilty of murder
and sentenced him to thirty years= confinement. In two issues,
appellant contends (1) the evidence supporting his conviction is legally and
factually insufficient, and (2) the trial court erred in admitting gruesome and
inflammatory photographs.  Because all
dispositive issues are clearly settled in law, we issue this memorandum opinion
and affirm.  See Tex. R. App. P. 47.4.








I.  Background

On June 16, 2002, appellant=s brother, Michael Mendez (AMendez@), was attending a party at the
complainant=s home.  Mendez argued with one of the other guests,
Rubin Zambrano (AZambrano@).  The argument
eventually ended without any physical altercation.  Shortly after the argument, Mendez left the
party and went to appellant=s house, where appellant and Chris Ginardi (AGinardi@) were sitting on the front
porch.  Mendez informed appellant and
Ginardi that someone at the party had threatened to kill him, and he asked
appellant and Ginardi if they would accompany him back to the party.  Mendez, appellant, and Ginardi got into Mendez=s truck and drove to Mendez=s home where they retrieved a shotgun
and a 30-30 rifle.[1]


When they arrived at the party, they parked on the street in
front of the complainant=s house.  Mendez and
appellant, each carrying a shotgun, exited the truck and approached the
house.  Ginardi stood by the truck,
holding the 30-30 rifle in his hands. 
Mendez and appellant encountered Zambrano and pointed their shotguns at
him.   

Observing the situation, the complainant decided to confront
Mendez.  The complainant grabbed the
shotgun that Mendez was holding, and a struggle ensued.  Appellant fired a Awarning shot@ into the air.  Appellant then lowered his shotgun and fired
in the direction of the complainant and Mendez. 
When the complainant fell to the ground, appellant and Mendez retreated
to the truck.  As they drove away,
appellant fired one more shot into the air. 
The complainant died as a result of a shotgun wound to the chest.        

II.  Sufficiency of the Evidence








In his first issue, appellant challenges the sufficiency of
the evidence to support his conviction for murder.  A person commits the offense of murder if he
(1) intentionally or knowingly causes the death of an individual, or (2)
intends to cause serious bodily injury and commits an act that is clearly
dangerous to human life that causes the death of the individual. Tex. Pen. Code Ann. ' 19.02(b) (Vernon 2003).  Appellant contends the evidence is legally
and factually insufficient to prove that appellant (1) fired the shot that
killed the complainant, or (2) acted with the intent to cause the complainant=s death.

A.        Legal
Sufficiency

In reviewing legal sufficiency of evidence, we view all of
the evidence in a light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318B19 (1979); Young v. State, 14 S.W.3d 748, 753 (Tex.
Crim. App. 2000).  In conducting this
review, we do not engage in a second evaluation of the weight and credibility
of the evidence, but only ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex.
Crim. App. 1993).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v.
State, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

First, appellant contends the evidence is legally insufficient
to prove that he fired the shot that killed the complainant.  At trial, the jury heard the testimony of two
witnesses who saw appellant fire the shotgun he was holding.  Rubin Zambrano testified that when appellant
and Mendez arrived at the party, they both pointed their shotguns at
Zambrano.  He testified that the
complainant ran up to Mendez and attempted to take Mendez=s shotgun.  Zambrano heard Mendez say something like Ashoot him.@ 
Zambrano then saw appellant fire his shotgun in the complainant=s and Mendez=s direction.  Zambrano testified that he did not actually
see the shot hit the complainant. 
However, following the shot, Zambrano observed the complainant slide to
the ground.








Additionally, Chris Ginardi testified that he saw appellant
shoot in the direction of  the
complainant.  Ginardi testified that
appellant did not fire directly at the complainant, but rather, shot Aa little bit at an angle.@ 
Nonetheless, the evidence in the case shows that the complainant was
shot directly in the left side of his chest. 
Harris County Assistant Medical Examiner, Roger Milton, testified that
multiple shotgun pellets were retrieved from the complainant=s body.  He also testified that the gunshot blast
fractured appellant=s fourth, fifth, and sixth ribs on the left side of his
chest.  Further, Michael Lyons of the
Houston Police Department Forensic Firearms Laboratory examined a photograph of
the complainant=s wound.  Lyons opined
that the shotgun blast did not impact any objects before striking the
complainant.  Viewing the evidence in a
light most favorable to the verdict, a rational jury could have concluded beyond
a reasonable doubt that appellant fired the shot that killed the complainant.

Second, appellant contends the evidence is legally
insufficient to prove he acted with the intent to cause the complainant=s death.  A person acts intentionally when it is his
conscious objective or desire to engage in the conduct or cause the
result.  See Tex. Pen. Code Ann. ' 6.03(a) (Vernon 2003).  The intent to kill may be inferred from the
use of a deadly weapon in a deadly manner. 
Adanandus v. State, 866 S.W.2d 210, 215 (Tex. Crim. App.
1993).  If a deadly weapon is used in a
deadly manner, the inference is almost conclusive that the user had the intent
to kill.  Id.; Flanagan v.
State, 675 S.W.2d 734, 745 n.9 (Tex. Crim. App. 1982).  A shotgun is a deadly weapon per se.  See Hill v. State, 913 S.W.2d 581, 590
(Tex. Crim. App. 1996).  Because the
evidence is legally sufficient to prove that appellant shot the complainant
with a shotgun, it is legally sufficient to prove he intended to cause the
complainant=s death.

B.        Factual
Sufficiency








When reviewing factual sufficiency of evidence, we view all
of the evidence in a neutral light and determine whether the evidence of guilt,
standing alone, is too weak to support the finding of guilt beyond a reasonable
doubt, or the evidence contrary to the verdict is so strong that the
beyond-a-reasonable-doubt standard could not have been met.  Zuniga v. State, 144 S.W.3d 477, 484B85 (Tex. Crim. App. 2004).  Although we review the fact finder=s weighing of the evidence, and we
are authorized to disagree with the fact finder=s determination, our evaluation
should not substantially intrude upon the fact finder=s role as the sole judge of the
weight and credibility given to witness testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  In our review, we must
consider the evidence that the appellant claims most undermines the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). 

To support his factual insufficiency argument, appellant
generally relies on the following: (1) no eyewitnesses could conclusively state
that appellant shot, or how he shot, the complainant; (2) Ginardi testified
that appellant did not shoot directly at the complainant; (3) appellant
testified that he randomly shot in the direction of the complainant but did not
consciously aim at the complainant; (4) appellant testified that if he would
have shot in the direction of the complainant, he would have shot his brother,
Mike Mendez; (5) appellant fired two shots in the air, which indicates he
consciously avoided shooting the complainant; (6) appellant never admitted that
he shot the complainant and did not know the complainant had been shot until
after leaving the party; (7) the firearms examiner for the State was unable to
conclusively determine that the fatal shot was fired from appellant=s shotgun; and (8) many drunken
individuals at the party were confronting each other, and in the commotion,
appellant panicked and fired his shotgun. 


Appellant accurately states that no witnesses conclusively
testified that appellant shot the complainant. 
However, based on the testimony recited in our legal sufficiency
analysis, the jury could have reasonably concluded that appellant fired the
shot that killed the complainant.  








Appellant testified that when he fired the second shot from
his gun, the complainant and Mendez were struggling on the ground, and that the
complainant was on top of Mendez. 
Appellant contends that this testimony shows a lack of intent to kill
because if he would have fired at the complainant, he necessarily would have
shot his brother, Mike Mendez.  However,
contrary to appellant=s testimony, Ginardi testified that the complainant and
Mendez remained standing while they were struggling for the gun.  Further, the evidence shows that the
complainant was struck directly in the chest by the shotgun blast and that none
of the shotgun pellets struck Mendez. 
This evidence strongly refutes appellant=s version of the facts.  

Although appellant contends that he did not aim his shotgun
at the complainant, the jury was free to decide the weight and credibility
given to appellant=s testimony.  See
Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  It is the jury that accepts or rejects
reasonably equal competing theories of a case. 
Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).  The evidence is not factually insufficient
merely because the jury resolved conflicting views of the evidence in favor of
the State.  See Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
In this case, the jury was entitled to infer intent to kill from
appellant=s use of a deadly weapon.  Ahrens v. State, 43 S.W.3d 630, 634
(Tex. App.CHouston [1st Dist.] 2001, pet. ref=d).

After reviewing all the evidence in a neutral light, we
conclude the State=s evidence, when considered by itself, is not too weak to
support a finding beyond a reasonable doubt that appellant intentionally caused
the complainant=s death, and the contrary evidence is not so strong that the
beyond-a-reasonable-doubt standard could not have been met.  Accordingly, the evidence is factually
sufficient to support the jury=s verdict.  

We overrule appellant=s first issue.








IV.  Admission of Photographs

In his second issue, appellant contends that the trial court
erred in admitting four photographs showing various depictions of the
complainant=s wounds.  At trial, appellant objected that the photos
were intended to inflame the jury and had no probative value.  The Texas Rules of Evidence govern the
admissibility of inflammatory photographs. 
Hicks v. State, 860 S.W.2d 419, 426 (Tex. Crim. App. 1993), overruled
on other grounds by Rosales v. State, 4 S.W.3d 228 (Tex. Crim. App.
1999).  Rule 403 requires an admissible
photograph to have A>some probative value and that its
probative value not be substantially outweighed by its inflammatory nature.=@ Rojas v. State, 986 S.W.2d
241, 249 (Tex. Crim. App. 1998) (quoting Long v. State, 823 S.W.2d 259,
272 (Tex. Crim. App. 1991)).  In
determining whether the inflammatory nature outweighs its prejudicial value,
the trial court should consider Athe inherent tendency that some
evidence may have to encourage [the] resolution of material issues on an
inappropriate basis and should balance carefully against it the host of factors
affecting probativeness, including relative weight of the evidence and the
degree to which its proponent might be disadvantaged without it.@ 
Fuller v. State, 829 S.W.2d 191, 206 (Tex. Crim. App. 1992), overruled
on other grounds by Castillo v. State, 913 S.W.2d 529 (Tex. Crim.
App. 1995).  Relevant factors in
ascertaining the admissibility of photographs under Rule 403 include the number
of exhibits offered, the gruesomeness, detail, and size, whether they are black
and white or color, whether they are close-up, whether the body is naked or
clothed, the availability of other means of proof, and other circumstances
unique to the case.  Santellan v.
State, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).  It is within the trial court=s discretion to admit photographs,
and we will disturb its decision on appeal only if it falls outside the zone of
reasonable disagreement.  Salazar v.
State, 38 S.W.3d 141, 151 (Tex. Crim. App. 2001).   








Autopsy or post-autopsy photographs can be used to illustrate
injuries and reveal the cause of the death. 
Ladner v. State, 868 S.W.2d 417, 426 (Tex. App.CTyler 1993, pet. ref=d). Autopsy photographs are generally
admissible unless they depict the mutilation caused by the autopsy.  Salazar, 38 S.W.3d at 151.  Even then, photographs might be admissible if
the alteration was necessary to fully depict the extent of the injuries in
certain cases when the photographs are highly probative and there is no danger
that the jury would attribute the autopsy alteration to the defendant.  Ripkowski v. State, 61 S.W.3d 378, 392B93 (Tex. Crim. App. 2001); Salazar,
38 S.W.3d at 152.  Rule 403 favors the
admission of relevant evidence and presumes that relevant evidence will be more
probative than prejudicial.  Etheridge
v. State, 903 S.W.2d 1, 21 (Tex. Crim. App. 1994).  Moreover, photographs are generally
admissible where verbal testimony about the same matter is admissible.  Emery v. State, 881 S.W.2d 702, 710
(Tex. Crim. App. 1994).

Appellant specifically complains about the admission of State=s Exhibits 42, 43, 44, and 49.  Exhibit 42 is an autopsy photograph that
depicts an internal view of the complainant=s chest cavity, which was penetrated
by shotgun pellets.[2]  Exhibit 43 depicts the complainant=s head and skull.[3]  The complainant=s skin is pulled back in order to
show his skull.  Exhibit 44 apparently
depicts the complainant=s heart, after it was removed from the body during the
autopsy.[4]  Exhibit 49 is an x-ray of the complainant=s chest cavity.  The x-ray shows multiple shotgun pellets
lodged in the complainant=s chest.








Appellant contends that, because the cause of death was not
contested, and other evidence was presented regarding the cause of death, the
photographs served no purpose but to inflame the minds of the jury.  However, we agree with the State that
Exhibits 42, 44, and 49 were probative of other contested matters, such as
bullet trajectory and shot pattern, that would enable the jury to see how the
physical evidence and circumstances of the shooting compared to appellant=s version of the facts.  Further, Exhibits 42 and 49 aided the medical
examiner in explaining the complainant=s injuries to the jury.  See Harris v. State, 661 S.W.2d 106,
108 (Tex. Crim. App. 1983) (holding autopsy photograph that helped illustrate
and clarify a medical examiner=s testimony was admissible). 
Exhibits 42, 44, and 49 are not particularly offensive, nor are they
portrayed in any manner more gruesome than that of the injuries inflicted.  See Narvaiz v. State, 840 S.W.2d 415,
429B30 (Tex. Crim. App. 1992).  Considering all of the relevant factors, we
find that the trial court did not abuse its discretion by admitting Exhibits
42, 44, and 49.








Exhibit 43 appears to depict an injury inflicted upon the
complainant=s skull.  However, we find no evidence in the record
that the complainant sustained an injury to his skull.  Exhibit 43 was admitted into evidence with a
group of other photographs during the medical examiner=s testimony.  Nevertheless, the medical examiner never
referred to Exhibit 43 during his testimony. 
Moreover, there is no indication in the record that the jury was shown
Exhibit 43 when it was admitted into evidence or subsequently.[5]  Under these circumstances, even if admission
of Exhibit 43 was in error, the record plainly reflects that it did not
influence the jury and was harmless.  See
Tex. R. App. P. 44.2(b)
(nonconstitutional error that does not affect substantial rights must be
disregarded); Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App.
2002) (noting that substantial rights are not affected by the erroneous
admission of evidence if, after examining the record as a whole, the appellate
court has fair assurance that the error did not influence the jury, or had but
a slight effect).  We overrule appellant=s second issue.  

Accordingly, the judgment of the trial court is affirmed.

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Memorandum Opinion filed February 1, 2005.

Panel consists of
Chief Justice Hedges and Justices Fowler and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  The record
reflects that appellant was already carrying one shotgun before arriving at Mendez’s
home. 





[2]  Appellant
states in his brief that Exhibit 42 depicts the complainant’s exposed head
wound.  However, the medical examiner
testified that Exhibit 42 depicts the path of travel of the shotgun pellets
into the complainant’s chest cavity. 





[3]  The record
contains a small, black and white photocopy of the photograph.  Therefore, it is difficult to ascertain what
details are depicted in the photograph. 
Neither appellant nor the State discuss the photograph in any
detail.  Additionally, the medical
examiner did not refer to the photograph in his testimony. 





[4]  Appellant
states in his brief that Exhibit 44 depicts the complainant’s head wound. 





[5]  During
deliberations, the jury requested to hear appellant’s and Mendez’s recorded
statements and to see the video of the crime scene.  However, the record does not show that the
jury requested any other exhibits. See Tex.
Code Crim. Proc. Ann. art. 35.26 (Vernon 1981) (providing that “ [t]here
shall be furnished to the jury upon its request any exhibits admitted as
evidence in the case.”)