**Opinion issued April 30, 2013.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

—————————————

**NO. 01-11-00662-CR**

—————————————

**IRVIN JOSEPH WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1313198**

## MEMORANDUM OPINION

A jury convicted appellant, Irvin Joseph Williams, of murder and assessed his punishment at 52 years' confinement. On appeal, appellant contends that (1) the evidence is insufficient to support his conviction; (2) he should receive a new

punishment hearing because of improper jury argument by the prosecutor; (3) the trial court erred in denying his motion for mistrial after the prosecutor elicited evidence of an extraneous offense; and (4) he was denied due process because of prosecutorial misconduct. We affirm.

## BACKGROUND FACTS FROM GUILT/INNOCENCE

On March 9, 2008, Sadar Cade heard footsteps on the stairs leading to John Brown's apartment, which was directly over Cade's apartment. Shortly thereafter, he heard fighting, then three consecutive gunshots, one right after the other. Cade then heard footsteps on the stairs leading to the parking lot, but he never saw who was making the noise.

When officers from nearby University of Houston arrived, they found the body of John Brown just inside the door to his apartment. He had five gunshot wounds—four to his arms and one to his neck. The medical examiner testified that the shot to the neck severed a carotid artery and would have been fatal, but that the cause of death was the cumulative blood loss caused by all of the gunshot wounds.

A. Taravella, a crime scene investigator for the Houston Police Department [HPD], soon arrived at the scene and found evidence indicating that Brown was a drug dealer. In the apartment, Taravella recovered a scale, 207 grams of cocaine, and over $8,000 in cash from a Gucci shoebox near the sofa. He also found several rounds of handgun ammunition, but did not locate a gun. From the

2

ballistics evidence, Taravella concluded that there were two shooters. One shot was fired from close range, struck Brown in the neck, went through the door, and hit a nearby building. Two other shots were fired from across the room near the television. Two cartridge casings fired from a .40 caliber gun were recovered from this area.

Taravella noticed several shoeboxes in the bedroom of the apartment that appeared to have been "ransacked." He thought that the suspects might have handled the boxes while rummaging through them, so he dusted several of the boxes for prints. He recovered a fingerprint from a Silver Prada shoebox.

On July 30, 2008, the fingerprints taken from the murder scene were identified as appellant's prints.

On September 5, 2008, Officers M. Smith and B. Bryan of HPD saw two men acting suspiciously at an apartment complex in southwest Houston. Because the complex had a criminal trespass affidavit on file, the officers attempted to detain the men. Each time the officers approached, the two men would turn and walk in the opposite direction. Eventually, the officers were able to detain the two men—appellant and David Cyres. When they were searched for the officers' safety, the police recovered a .40 caliber Glock handgun from Cyres. Cyres was arrested, but appellant was released. Ballistics testing on the gun recovered from Cyres showed that it was the same .40 caliber gun used to shoot Brown.

With fingerprint evidence placing him at the scene of the crime and evidence placing him in the company of a person carrying the gun used in the murder, Officers M. Miller and T. Miller, began searching for appellant.

On October 27, 2008, Officers Miller traveled to Louisiana to look for appellant in New Orleans, his hometown. While there, they spoke to his mother, but were unable to locate appellant. So, the officers returned to Houston and had a warrant issued for appellant's arrest.

On October 31, 2008, appellant was arrested in Louisiana, based on the Texas warrant. Officers Miller traveled again the Louisiana, where, after being read and waiving his statutory rights, appellant gave a voluntary statement. In his statement, appellant told Miller that he went with Israel Hudgins to buy crack cocaine from Brown. A person he knew only as "D," later identified as Darryl Pierre, drove them to Brown's apartment in a grey Ford Focus. They purchased cocaine, left, then returned later to purchase more.

When they entered the apartment, appellant said that Hudgins shot Brown in the neck, then handed a .40 caliber gun to appellant and threatened to shoot him if appellant did not also shoot Brown. Appellant said that he then shot Brown two times. Then, according to appellant, Hudgins went into the back to look for drugs and money and told appellant, "Bitch, you better do something." Appellant said that he then intentionally touched a box and left a fingerprint "so that the detective

4

could find me." He and Hudgins then took approximately $2,000 and Brown's .9 millimeter handgun and fled. Pierre acted as the get-away driver.

In his statement, appellant also admitted that he was carrying the same .40 caliber gun the day that David Cyres was arrested, and that he gave Cyres the gun so that he, appellant, would not get in trouble.

At trial, appellant presented Pierre, who had already been convicted of this murder, as a defense witness. Pierre testified that, on the day of the murder, he, appellant, and Hudgins went to buy drugs at someone's apartment. While he waited in the car, Hudgins and appellant went inside. Pierre knew that Hudgins had a gun, and when asked if Hudgins had shown the gun to appellant, Pierre replied, "yeah, he got them. He handed—I knew he put one on him. I didn't know about the other one." Pierre did not hear any gunshots because he was listening to music.

Hudgins got in the front passenger seat, threw a chrome .9 mm handgun into his lap, and said, "come one, let's go." Pierre testified that Hudgins told him that "he shot the guy in the neck with the .357 and gave [appellant] a .40 and told him if he don't shoot him, he was going to shoot him."

On cross-examination, Pierre admitted that he gave contrary information to Officer Miller during an interview on November, 21, 2008. In that interview, Pierre told Miller that, on the day of the murder, appellant came to Pierre's house

5

and said that "he wanted to hit a lick" or rob someone. Pierre told Miller that it was appellant's idea to rob Brown because he knew Brown had a lot of money. Pierre said that both appellant and Hudgins had their own guns when they went to Brown's apartment. Pierre told Miller that after the men returned to the car, appellant said, "I got $1000," and "I had to shoot him. If we didn't kill him, he would have come looking for us."

Pierre also testified that, as he drove away from the apartment, appellant cautioned him, "You better slow down. You're going to make this car hot," or draw police attention.

Pierre testified that he had lied to Officer Miller when he said that a robbery was appellant's idea. He said that he lied because he believed that it was appellant who had implicated him in the murder. He explained that he changed his story because he had since come to believe that it was Hudgins who had implicated him.

## SUFFICIENCY OF THE EVIDENCE

In four related points of error, appellant contends the evidence is insufficient to support his conviction. Specifically, appellant argues that there is insufficient evidence to support his conviction, either as a principal, party, or co-conspirator, "under any of the theories of murder submitted to the jury, namely intentional murder, serious bodily injury murder, or felony murder." Appellant also argues

6

that the evidence is legally and factually insufficient to support the jury's negative finding on his affirmative defense of duress.

*Standard of Review*

We review a challenge to the legal sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S. Ct. at 2786, 2789 & n. 11; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency-of-the-evidence standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008) (stating jury is sole judge of credibility of witnesses and weight to give their testimony). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *see also Clayton*, 235 S.W.3d at 778 (reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination").

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. In determining the sufficiency of the evidence, a reviewing court examines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). Finally, the "cumulative force" of all the

circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused." *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

*Applicable Law*

A person commits murder if he intentionally or knowingly causes the death of another person or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. TEX. PENAL CODE § 19.02(b)(1),(2) (Vernon 2011). A person commits the offense of felony murder if that person commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, that person commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2011); *see White v. State*, 208 S.W.3d 467, 467 (Tex. Crim. App. 2006). Here, the underlying felony alleged was robbery. A person commits robbery if, in the course of committing theft, and with intent to obtain or maintain control of property, he intentionally or knowingly places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a) (Vernon 2011). When, as here, a general verdict is returned and alternate theories of liability alleged, we may uphold the conviction if the

9

evidence is sufficient under any of the theories submitted. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (citing *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992)).

*Rejection of Duress Affirmative Offense*

Because most of appellant's arguments regarding the sufficiency of the evidence rest on his defense of duress, we address that issue first.

The trial court instructed the jury on appellant's affirmative defense of duress. It is an affirmative defense to prosecution that the defendant engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. TEX. PENAL CODE ANN. § 8.05(a) (Vernon 2011). However, to prevail on the affirmative defense of duress, appellant was required to show by a preponderance of the evidence that he was compelled to engage in the proscribed conduct by threat of imminent death or serious bodily injury to himself or another. *Id.* § 2.04(d); *see Williams v. State*, 911 S.W.2d 191, 195 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). Compulsion exists only if the force or threat of force would render a person of reasonable firmness incapable of resisting the pressure. *See* TEX. PENAL CODE ANN. § 8.05(c) (Vernon 2011); *Shaw v. State*, 874 S.W.2d 115, 119 (Tex. App.—Austin 1994, pet. ref'd). The defense of duress is unavailable if the defendant intentionally,

knowingly, or recklessly placed himself in a situation in which it was probable that he would be subjected to compulsion. TEX. PENAL CODE ANN. § 8.05(d).

*Legal Sufficiency*

When an appellant asserts that there is no evidence to support an adverse finding on which he had the burden of proof, we construe the issue as asserting that the contrary position was established as a matter of law. *Matlock v. State*, No. PD-0308-12, 2013 WL 690854, at *3 (Tex. Crim. App. Feb. 27, 2013). First, we search the record for evidence favorable to the finding, disregarding all contrary evidence unless a reasonable factfinder could not. *Id.* If we find no evidence supporting the finding, we then determine whether the contrary position was established as a matter of law. *Id.*

Here, there was legally sufficient evidence to support the jury's negative finding on appellant's affirmative defense of duress. By appellant's own statement to Miller, he shot Brown several times with a .40 caliber gun. The ballistics tests confirm that this weapon was used to shoot Brown. Appellant was still in possession of that same weapon several months later, when, by his own admission he gave it to Cyres so that he would "not get in trouble." From this, the jury could have concluded that the gun belonged to appellant, not Israel Hudgins as appellant claimed. Also, appellant's fingerprint was found on a shoe box at Brown's apartment in an area of the apartment that, to police, looked like it had been

11

rummaged through while appellant was looking for something. The jury could also have reasonably concluded that by participating in a drug deal at best, or a robbery at worst, appellant placed himself in a situation in which it was likely that he would be subject to compulsion by his co-actors. There was also evidence that, rather than go to police and claim compulsion, appellant fled the state.

Because there was some evidence supporting the jury's failure to find duress, we need not determine whether he established the defense as a matter of law. *Id.* at *6. Because appellant did not conclusively prove his affirmative defense under the legal sufficiency standard set forth in *Matlock*, he is not entitled to an acquittal. *Id*. at *7.

*Factual Sufficiency*

"A criminal defendant might also raise a factual-sufficiency challenge to the jury's adverse finding on his affirmative defense." *Id.* at *4. In reviewing such a challenge, we view the entirety of the evidence in a neutral light, but do not usurp the function of the jury by substituting our own judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony. *Id.* We may sustain a defendant's factual-sufficiency claim only if, after setting out the relevant evidence and explaining precisely how the contrary evidence greatly outweighs the evidence supporting the verdict, we clearly state why the verdict is so much against

the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased. *Id.*

Appellant's duress defense is based on two pieces of evidence: (1) his November 3, 2008 interview with Officer Miller, and (2) Darryl Pierre's testimony at trial. We examine each to determine whether together this contrary evidence so greatly outweighs the verdict such that the verdict is manifestly unjust.

When Miller interviewed appellant on November 3, 2008 in New Orleans, appellant told Miller the following:

> Me and [Hudgins] (inaudible) went up there, we scoop like a (inaudible) a quarter of crack and we left. Second time we came back, me and [Hudgins] walks in, [Brown] was closing the door, [Hudgins] shot him in his neck. .357. He gave me a .40 he told me if I ain't shoot [Brown] that he was going to shoot me, so I pulled the trigger. Shot two times. After that I just stood there, [Hudgins] ran in the back to go look for and search for money and drugs. He told me "Bitch, you better do something!" so I was scared so best thing I can come up to do is to touch something that was going to hold, you know that was, so the detective could find me. That's what I did.

The jury, as fact-finder, determines the credibility of the witnesses and what weight to give their testimony. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The jury may choose to believe all, some, or none of the testimony presented. *Hughes v. State*, 897 S.W.2d 285, 289–90 (Tex. Crim. App. 1994).

Here, it was the jury's prerogative to believe appellant's statement that he shot Brown with a .40 caliber gun, but disbelieve his statement that Hudgins gave

13

him the gun and made him shoot. According to appellant's statement, Hudgins shot Brown, then gave appellant a gun and forced him to shoot also. However, witnesses testified that they heard three shots fired one right after the other with no break between the first shot and the second and third shots. The jury could also have disbelieved appellant's statement that he intentionally left his fingerprint so that police could find him, especially in light of evidence that appellant made every effort to avoid police by first giving his weapon to Cyres when approached by police on September 5, 2008, and then, later, by fleeing to New Orleans.

At trial, Darryl Pierre testified that on the day of the murder, Hudgins and appellant picked him up to go "score some drugs." He knew that Hudgins had a gun. While he sat in the car listening to music, Hudgins and appellant went into the drug dealer's apartment. When they came out, Hudgins got in the passenger seat, threw a .9mm gun in Pierre's lap and said, "Come on, let's go." Pierre testified that Hudgins told him that "he shot the guy in the neck with the .357 and gave [appellant] a .40 and told him if he don't shoot him, he was going to shoot him."

However, on cross-examination, Pierre admitted that he had made an earlier inconsistent statement to police. In his previous statement, Pierre told police that it was appellant's idea to go "hit a lick," which meant they were going to rob someone. Pierre told police it was appellant's idea to rob Brown because appellant knew he had a lot of money. Pierre told Officer Miller that when appellant came

14

back to the car, he said that he had gotten $1000, but that he had to shoot Brown because if they did not kill him, Brown "would have come looking for us."

At trial, Pierre testified that he lied to police in his first statement because he believed that appellant was responsible for him being arrested and sent to jail for the same offense. However, he claimed that he was telling the truth at trial because he now believed that Hudgins was the person responsible for sending him to jail. He also testified that it was against his "code" to be a snitch.

Again, it was the jury's prerogative to disbelieve Pierre's trial testimony, especially in light of his inconsistent prior statement to police, in which Pierre told police that the robbery was appellant's idea and that appellant admitted shooting Brown so that he would not come looking for them. The jury could also have considered Pierre's testimony that it was against his code to be a snitch, and concluded that he changed his testimony at trial from that of his prior statement to police to avoid being labeled a "snitch."

After reviewing all of the evidence, we cannot conclude that the evidence supporting appellant's affirmative defense greatly outweighs the State's contrary evidence.

Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's negative finding on the issue of duress. We overrule points of error three and four.

*Guilt as Party or Co-Conspirator*

The jury was instructed that it could find appellant guilty either as a principal or a party to the offense. A person is criminally responsible as a party to the offense if it is committed by the actor's own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2011). A person is criminally responsible for an offense committed by another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

To establish guilt under the law of parties, the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part towards the execution of their common purpose. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994); *Ahrens v. State*, 43 S.W.3d 630, 633–34 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). In determining whether a defendant participated in an offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Ransom*, 920 S.W.2d at 302; *Ahrens*, 43 S.W.3d at 634. Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative effect of all the incriminating facts are sufficient to support the

conviction. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). Circumstantial evidence may also prove party status. *Ransom*, 920 S.W.2d at 302.

Under the law of parties, a person may also be held criminally responsible for the conduct of another who is acting as a co-conspirator. *See* TEX. PENAL CODE ANN. § 7.02 (Vernon 2011). A person is guilty as a party to a felony offense committed by a co-conspirator if (1) the offense committed by the co-conspirator is a felony, (2) the co-conspirator committed the offense during an attempt to carry out the conspiracy, (3) the co-conspirator committed the offense in furtherance of the unlawful purpose of the conspiracy, and (4) the defendant should have anticipated that the offense would result from the carrying out of the conspiracy. *See id.*; *Love v. State*, 199 S.W.3d 447, 452 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). A criminal conspiracy forms when two or more persons agree to engage in conduct that would constitute a felony so long as the agreeing parties actually intend that a felony be committed and one of them later commits an overt act in pursuance of their agreement. TEX. PENAL CODE ANN. § 15.02(a) (Vernon 2011). The law of parties requires proof that the other person committed the predicate offense for which the defendant is held vicariously responsible. *See id.* § 7.02(a)-(b).

Appellant contends that he is not guilty as either a party or a co-conspirator because he "was present only to assist in the purchase of cocaine when Hudgins unexpectedly shot the complainant in the neck causing his death," and that he, appellant, "then shot the complainant in both arms when Hudgins threatened to shoot him."

However, the jury could have concluded that this was planned as a robbery, not merely a drug purchase. According to Pierre's testimony on direct, Hudgins had two guns when the men went to Brown's apartment. When asked if Hudgins had shown the guns to appellant, Pierre replied, "yeah, he got them. He handed—I knew he put one on him. I didn't know about the other one." Appellant admitted shooting Brown, along with Hudgins, and, as stated above, there is sufficient evidence to support the jury's negative finding of duress.

Appellant's fingerprint was found on a shoebox in the Brown's bedroom, indicating that he had been rummaging around or ransacking the area while looking for something to steal. The jury could have disbelieved appellant's testimony that he left the fingerprint on purpose so that the police could find him, especially in light of evidence that appellant did everything possible to avoid detection by telling Pierre to slow down or he would make the car "hot" as they made their escape, giving the gun used in the murder to Cyres to avoid getting "in trouble," and fleeing to New Orleans.

18

Also, in his November 21, 2008 statement, Pierre told police that it had been appellant's idea to rob Brown because he knew that Brown had a lot of money. And, in fact, money and a gun were taken from Brown's apartment.

Several months after the offense, appellant still possessed the gun he used to shoot Brown. He admitted that he gave the gun to Cyres so that he, appellant, would not get in trouble.

Robbery at gunpoint is sufficient, standing alone, to make the shooting an act that should have been anticipated, and, when an individual is shot, it must also be anticipated that the person may be injured or die as a result of the shots. *See Williams v. State*, 974 S.W.2d 324, 330 (Tex. App.—San Antonio 1998, pet. ref'd) (holding that killing during pawnshop robbery was foreseeable where at least one conspirator was present with firearm). Texas courts have consistently held that when a murder occurs in the course of a conspiracy to commit robbery, all parties to the robbery are guilty of murder. *See Green v. State*, 682 S.W.2d 271, 285–86 (Tex. Crim. App. 1984); *Longoria v. State*, 154 S.W.3d 747, 755 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also Ruis v. State,* 579 S.W.2d 206, 209 (Tex. Crim. App. 1979); *King v. State*, 502 S.W.2d 795, 797–98 (Tex. Crim. App. 1974). Courts have also consistently held that conspirators should anticipate that a murder could occur in the course of the commission of a robbery when they have knowledge that a co-conspirator is carrying a firearm. *See Love*, 199 S.W.3d at

19

453; *Longoria*, 154 S.W.3d at 756–57. "Evidence that a defendant knew his co-conspirators might use guns in the course of the robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery." *Love*, 199 S.W.3d at 453.

Based on the evidence presented at trial, the jury could have rationally concluded that appellant, Hudgins, and Pierre had planned to rob Brown, and that, all involved knew that Hudgins at least was armed. Therefore, under the case law cited above, the evidence is sufficient to convict appellant of felony murder as either a party or a co-conspirator.

We overrule points of error one and two.

## IMPROPER JURY ARGUMENT AT PUNISHMENT

In points of error five through eight, appellant contends that he is entitled to a new punishment hearing because of improper jury argument by the prosecutor at the punishment phase of the trial.

*Applicable Law*

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).

20

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. 2004); *Hunt*, 2012 WL 858613, at *2. When the refusal to grant a mistrial follows an objection for improper jury argument, we balance three factors to determine whether the trial court abused its discretion: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction or punishment absent the misconduct. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011); *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) ; *Hunt*, 2012 WL 858613, at *2. Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, that is, "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Hawkins,* 135 S.W.3d at 77; *see Archie,* 340 S.W.3d 739 ("Mistrial is . . . appropriate . . . when . . . the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'") (citing *Young v. State,* 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)). In most cases, an instruction to disregard will cure the alleged harm. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). This is so because we generally presume the trial court's instruction will be obeyed by the jury. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

21

*Statement Regarding Prosecutor's Plea for Punishment Outside the Range*

Appellant complains about four statements by the prosecutor.  We will address each respectively.

In his closing argument, defense counsel asked the jury to give appellant "a chance because he has apologized to the [complainant's] family and because he has a life that he also can do something with and you consider that."  The prosecutor responded by arguing:

> [T]he bottom line in this case, folks, is our community in 2005 opened our hearts, and our souls, and our wallets; and in exchange, this defendant opened fire.  That's the bottom line in this case. And you want to give him a chance?  I would—*I wouldn't let him out in a million years.*

Defense counsel objected to "improper jury argument," the trial court sustained the objection, but refused defense counsel's request for an instruction to disregard. Having obtained an adverse ruling, defense counsel did not further request a mistrial.

In point of error five, appellant argues that the argument was improper because it injected the prosecutor's personal opinion on punishment, which he then invited the jury to adopt when he further argued that, "You shouldn't let him out in a million years."

Here, the prejudicial effect of the argument was not great.  No reasonable argument can be made that the jury believed that a "million year" sentence was a

22

possibility. In fact, the prosecutor made it clear that he was seeking a life sentence, which was in the possible range of punishment. The State's use of hyperbole in attempting to make its plea for law enforcement was not unduly prejudicial because jurors are capable of understanding rhetorical hyperbole for what it is. *Erlandson v. State*, 763 S.W.2d 845, 855 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

Although no curative measures were taken, as we have already stated, the jury was capable of understanding that the prosecutor was not, in fact, asking for a sentence outside the range, but was merely asking for a lengthy sentence.

Finally, the certainty of appellant's punishment was not affected by the argument. Appellant admitted shooting Brown. There was also punishment evidence that appellant had participated in an aggravated robbery and had also discharged his weapon at the victims in that case. And, despite the prosecutor's pleas for a life sentence, the jury assessed punishment at 53 years' confinement, which was in the middle of the punishment range.

Accordingly, the trial court did not err by denying appellant's request for an instruction to disregard. We overrule point of error five.

*Statements Regarding Argument Outside the Record*

During closing argument at punishment, the prosecutor argued that "there's a lot of people in jail that try to right the wrongs they've done." He also argued

"what if that bullet didn't go through a wall and it went through a window and the Lyn-Mar Apartments were facing the other way?  Or through the defendant's reckless shots, went through that area, through that door, and hit a child playing?"

Defense counsel objected that both statements were outside the record.  The trial court sustained the objections, instructed the jury to disregard the statements, but denied defense counsel's request for a mistrial.

The first statement about people in jail trying to right their wrongs, while outside the record, does not inject facts that are harmful or even relevant to the defendant.  The second comment, though speculative and outside the record, only points out what is already obvious to most jurors—that shootings in public places can sometimes injure innocent people, even though that was not the case here.  The effects of these remarks were not so prejudicial that the instruction to disregard was ineffective.  *See Archie,* 340 S.W.3d 739  ("Mistrial is . . . appropriate . . . when . . . the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'") (citing *Young,* 137 S.W.3d at 71).  And, for the same reasons given in our discussion of point of error five, the certainty of his punishment was not affected by any argument outside the record by the prosecutor.

Accordingly, we overrule issues six and seven.

24

*Statement Striking at Defendant over Counsel's Shoulders*

After appellant told the jury that he would not "let appellant out in a million years," he followed up with the statement:

> You shouldn't let him out in a million years. *[Defense counsel] got up here because he's afraid and he knows what this defendant needs*, what he deserves.

Defense counsel objected that the prosecutor was "attacking the defendant by attacking the defendant's attorney saying I'm afraid of anything." The trial court sustained the objection, instructed the jury to disregard, but denied defense counsel's request for a mistrial.

In point of error eight, appellant argues that this argument strikes at appellant over the shoulders of counsel and implies that counsel was afraid of appellant and knew what punishment he needed and deserved.

When a prosecutor makes uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant, courts refer to this as striking a defendant over the shoulders of his counsel. *Phillips v. State*, 130 S.W.3d 343, 355 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on reh'g), *aff'd,* 193 S.W.3d 904 (Tex. Crim. App. 2006). A prosecutor risks improperly striking at a defendant over the shoulders of counsel when the argument refers to defense counsel personally and when the argument explicitly impugns defense counsel's

character. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); *Davis*, 268 S.W.3d at 712.

Here, the statement that defense counsel was "afraid" and knew what the defendant "needs" and "deserves," does not allege improper conduct by the attorney or impugn his character. In fact, it is not clear what the prosecutor was saying that the defense counsel was afraid of. It could be, as the State argues, that the prosecutor was trying to say the defense counsel was afraid that his client was going to get a lengthy sentence because that is what he deserved.

Even if we agreed that the comment was a strike at the defendant over the shoulders of counsel, the statement was not so extreme or manifestly improper that it could not be cured by an instruction to disregard. *See Wesbrook*, 29 S.W.3d at 115 (holding that prosecutor's comment that defendant had to come up two different stories, "One to [the police] and one to you" was not so flagrant that instruction to disregard was ineffective); *Tilbury v. State*, 890 S.W.2d 219, 223 (Tex. App.—Fort Worth 1994, no pet.) (holding that prosecutor's comment that defense counsel tried to "muddy the waters" was improper as striking defendant over shoulder of counsel, but trial court's instruction to disregard cured error). And, for the same reasons given in our discussion of point of error five, six, and seven, the certainty of appellant's punishment was not affected by any argument striking at him over the shoulders of counsel

Accordingly, we overrule point of error eight.

## EXTRANEOUS OFFENSE

In point of error nine, appellant contends the trial court erred in denying his motion for mistrial after a prosecution witness testified that the pistol appellant used in this murder was also involved in a shooting on March 14, 2010.

During Officer Miller's testimony, the following exchange took place:

[Prosecutor]: Now, this murder happens on March 9th of 2008. Can you tell us how long it was until you got a match on the fingerprint?

[Miller]: It was July 30th, 2008.

[Prosecutor]: So, we've been---March, April, May, June. You said July?

[Miller]: July 30th, 2008. That's correct.

[Prosecutor]: So, five months later you had the fingerprint match. When did the gun get recovered?

[Miller]: March 14th, 2008.

[Prosecutor]: So, that was just a few days [after the murder]. What took—

[Miller]: I'm sorry. The shooting involving the gun happened March 14th, 2008; and the gun was recovered—

[Prosecutor]: No, just when the gun—

[Defense Counsel]: I'm sorry, Judge. I'm going to object. May we approach, please?

[Trial Court]: Okay.

27

Defense counsel objected that Miller's testimony opened an extraneous offense. The trial court sustained appellant's objection, instructed the jury to disregard Miller's comment, but denied appellant's motion for a mistrial.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). An appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Wead*, 129 S.W.3d at 129. A mistrial is required only in extreme circumstances where the prejudice is incurable. *Archie*, 221 S.W.3d at 699. A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Hawkins*, 135 S.W.3d at 77.

Appellant argues that a mistrial was required because "it left the clear impression that the appellant was involved in the shooting, and that the shooting was without provocation or explanation." It is well established that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard unless they are so clearly calculated to inflame the minds of the jury and are of such a nature as to suggest the impossibility of withdrawing the impression produced. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992). Whether a witness's improper reference to an extraneous offense warrants a

mistrial depends on the particular facts of the case. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). Because a mistrial is an extreme remedy, a trial court should declare a mistrial only when the error or misconduct is highly prejudicial and incurable. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Hudson v. State,* 179 S.W.3d 731, 738 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

We conclude that Miller's uninvited reference to a shooting involving the same gun used in this case was not so inflammatory as to undermine the efficacy of a motion to disregard. The State did not intentionally elicit the information; the prosecutor's question was about when the gun was recovered, not whether it had been involved in another crime. And, Miller did not state that appellant had used the gun in another shooting; he mentioned only that the gun was involved in a shooting. In fact, in this case the same inference could be made that Hudgins had been involved in another shooting, because, according to appellant, the .40 gun was not his, but Hudgins's. Finally, we note that the court's charge instructed the jury that it could consider extraneous offense evidence only if it believed beyond a reasonable doubt that appellant committed such an act, and then only in determining motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. We presume the jury followed both the instruction

to disregard and the charge. *See Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996).

Accordingly, we overrule point of error nine.

## PROSECUTORIAL MISCONDUCT

In point of error ten, appellant contends that he was denied due process of law because of prosecutorial misconduct. Specifically, appellant complains that the prosecutor (1) conducted an improper opening statement because it was "not a roadmap of the evidence to follow, but a final argument;" (2) erroneously solicited hearsay testimony; (3) erroneously solicited extraneous offense testimony; (4) mislead the jury regarding why appellant was arrested in New Orleans; (5) improperly impeached Darryl Pierre; and (6) conducted an improper closing argument. Appellant argued that, because it cannot be said beyond a reasonable doubt that the prosecutor's misconduct did not contribute to his conviction or punishment, this Court should either reverse his conviction, or grant a new punishment hearing."

Some of these complaints were made and sustained at trial, and subsequently addressed here on appeal. However, appellant never made a due-process objection or indicated to the trial court that he believed that cumulative effect of the prosecutor's actions had deprived him of a fair trial. There is nothing in the record to show that the trial court was aware that appellant was making a due process

30

claim. Thus, his due process complaint based on prosecutorial misconduct is waived. *See Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012) (holding that evidentiary objections at trial did not present trial court with opportunity to rule on due process claim raised on appeal, thus due process claim was waived).

Accordingly, we overrule point of error ten.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).